# IN THE SUPREME COURT OF TEXAS

═══════════
No. 17-0477
═══════════

IN THE INTEREST OF A.C., J.Y., J.Y. JR., L.B., AND E.B., CHILDREN

═══════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════

**Argued September 10, 2018**

JUSTICE GUZMAN delivered the opinion of the Court.

Proceedings to terminate the parent–child relationship implicate rights of constitutional magnitude that qualify for heightened judicial protection. Involuntary severance of parental rights thus requires "clear and convincing evidence" that termination is warranted and in the child's best interest.[1] The intermediate proof standard is a constitutional minimum and a statutory mandate that necessitates a commensurately heightened standard of review.[2] In this government-initiated termination proceeding, the issue is whether—under the elevated proof standard—a parent's unrecanted and uncontroverted admission that termination is in her children's best interests, coupled with stipulations as to grounds for termination and permanency plans, are any evidence to support

---

[1] TEX. FAM. CODE § 161.001; *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982).

[2] *See Santosky*, 455 U.S. at 769-70; *In re J.F.C.*, 96 S.W.3d 256, 264-65 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002).

the trial court's best-interest findings. Rejecting legal- and factual-sufficiency challenges to the termination decree, the court of appeals affirmed, holding such evidence—in the form of statements in a mediated settlement agreement signed by the parents, counsel, and others—is sufficient to support termination.[3] We agree. We recently held in *In re K.S.L.* that similar affirmations in an affidavit of voluntary relinquishment are, in the ordinary case, ample evidence to support a best-interest determination.[4] Discerning no material difference in the evidentiary value of a parent's voluntary statements in a mediated settlement agreement, we affirm the court of appeals' judgment.

## I. Background

The Department of Family and Protective Services (DFPS) took custody of four children after receiving reports that two of them were living with Mother in a squalid, structurally unsound, and drug-infested habitation. A fifth child was later removed from Mother's custody at birth based on allegations that the baby's meconium tested positive for methamphetamines/amphetamines.[5] DFPS sued to terminate Mother's parental rights to all five children, alleging myriad statutory grounds including abandonment, neglect, endangerment, and noncompliance with the provisions of a court order establishing the actions necessary to reclaim custody.[6] DFPS also sought to terminate parental rights of three men alleged to be the children's fathers.

Pursuant to Chapter 153 of the Texas Family Code, the parties engaged in mediated settlement proceedings that culminated in an agreement signed by Mother, the putative fathers, the

---

[3] ___ S.W.3d ___, 2017 WL 1684649, at *1 (Tex. App.—Dallas May 2, 2017).

[4] 538 S.W.3d 107, 111 (Tex. 2017) (holding that, under a clear-and-convincing-evidence standard, a statutorily compliant affidavit relinquishing parental rights "can be ample evidence to support a best-interest determination").

[5] "Meconium" is the first fecal excretion of a newborn child.

[6] *See* TEX. FAM. CODE § 161.001(b)(1)(A), (B), (C), (D), (E), (N), (O), & (Q).

parents' respective attorneys, the children's guardian and attorney ad litem, a Court-Appointed Special Advocates (CASA) supervisor, and DFPS representatives and counsel.[7] In the mediated settlement agreement (MSA), the parents stipulated that their parental rights would be terminated on two specific statutory grounds—constructive abandonment as to the baby and failure to comply with a court order as to the other children—and best interests.[8] In two separate places, the parties collectively agreed the MSA's terms were in the children's best interests.

In the MSA, the parties assented to DFPS's appointment as permanent managing conservator with all concomitant rights and duties under the Texas Family Code, including the right to consent to adoption, and the parents' appointment as non-parent possessory conservators with limited visitation rights. The MSA also includes permanency plans for the children, providing for specific relative and non-relative placements for each child and requiring DFPS to consent to adoption by the designated individuals "[a]bsent unforeseeable circumstances." As a failsafe if adoption by the designated individuals is not viable, the agreement requires DFPS to transfer permanent managing conservatorship to those individuals "absent unforeseeable circumstances." The parents' stipulations as to termination are not contingent on either the children's placement with the individuals named in the agreement or the parents' consent to an alternative placement.

Specific admonishments and acknowledgments confirm the availability of counsel and herald the gravity and voluntariness of the parents' stipulations:

- "**THE FOLLOWING MEDIATED SETTLEMENT AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS ENTERED INTO**

---

[7] *See id.* § 153.0071(c) ("On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent–child relationship to mediation."), (d) (making mediated settlement agreements binding on the parties if the agreement meets certain requirements, including signature by all parties and any counsel present at the time the agreement is signed).

[8] *See id.* § 161.001(b)(1)(N)-(O), (2).

3

**PURSUANT TO SECTION 153.0071 OF THE TEXAS FAMILY CODE. THIS AGREEMENT IS SIGNED BY EACH PARTY TO THE AGREEMENT AND EACH PARTY'S ATTORNEY WHO IS PRESENT AT THE TIME THE AGREEMENT IS SIGNED. A PARTY IS ENTITLED TO JUDGMENT ON THIS MEDIATED SETTLEMENT AGREEMENT NOTWITHSTANDING RULE 11, TEXAS RULES OF CIVIL PROCEDURE OR ANOTHER RULE OF LAW.**"[9]

- "Each signatory to this settlement agreement has entered into the settlement freely and without duress after having consulted with professionals of his or her choice."

- "Each party has been advised by the mediator that the mediator is not the attorney for any party and that each party should have this agreement approved by that party's attorney before executing it."

- "This stipulation is signed voluntarily and with the advice and consent of counsel . . . and its provisions are intended to be incorporated into a final order."

- "**THE PARTIES HERETO AGREE THAT THIS MEDIATED SETTLEMENT AGREEMENT IS BINDING ON SAID PARTIES AND IS NOT SUBJECT TO REVOCATION.**"

Shortly after the MSA's execution, two of the children were returned to DFPS's care due to a material change in the personal circumstances of the fictive kin designated in the MSA as anticipated adopters. In light of this development, Mother filed a motion to invalidate and modify the MSA, but only as to the agreed placement for those two children, stating the placement had become unworkable and was not in the children's best interests. Mother requested a new placement match for those children and the right to designate suitable relatives or fictive kin. Mother did not, however, repudiate her admissions regarding termination of her parental rights to any of her children. To the contrary, she affirmatively requested that "the MSA's conditions of termination

---

[9] *See id.* § 153.0071(d) (specifying the terms under which a mediated settlement agreement is binding on the parties).

of [her] parental rights, including the legal grounds . . . , be kept in place with the new placement." The trial court denied the motion, noting the agreement provided for DFPS's consent to adoption and did not preclude DFPS from looking for substitute placements.

The parties waived a jury trial, and the matter proceeded to a prove-up hearing the following month. On request, and without objection, the trial court took judicial notice of the MSA, which had been filed in the court's records. A DFPS caseworker also testified as to the MSA's contents, including the parents' stipulations regarding the grounds for termination, and that severance of the parent–child relationship was in the children's best interests. No other witnesses were called, and no evidentiary elaboration was offered.

Although Mother had an opportunity to testify, she appeared only through counsel, who advised the court: "My client is not here today but she has signed the mediated settlement agreement . . . ." The children's ad litem asserted, without objection, that the relief specified in the MSA was in the children's best interests, and the CASA representative agreed. No contrary evidence was offered.

At the close of evidence, the trial court found grounds to terminate the parent–child relationship as to each child and that termination of each parent–child relationship was in that child's best interest. The court approved the MSA and incorporated it into the final order, both orally and in the termination decree. No post-judgment motions were filed.

Mother appealed, but the fathers did not. In three appellate issues, Mother challenged the factual and legal sufficiency of the evidence to support the trial court's best-interest findings and

5

appointment of DFPS's director as the children's permanent managing conservator. The court of appeals affirmed.[10] As to evidentiary support for the best-interest findings, the court observed that:

- Mother never withdrew her voluntary stipulations in the MSA and had the opportunity to object at the prove-up hearing, but failed to do so;

- Mother's agreement to terminate her parental rights based on constructive abandonment and failure to meet the court-ordered requirements for reunification "support inferences adverse to Mother regarding potential dangers to the children, her parenting abilities, and her relationships with the children";

- the MSA defined the placement plans for the children, which contemplated that "unforeseeable circumstances" might prevent the agreed placements from taking place; and

- the MSA did not condition termination of Mother's parental rights on the agreed placements.[11]

The court thus held that the stipulations and placement plans in the MSA are sufficient evidence of several factors relevant to the best-interest determination.[12] The court also upheld the managing-conservator appointment because termination of Mother's parental rights was appropriate and she presented no evidence that she is a "suitable, competent adult" to serve as managing conservator.[13]

On petition for review to this Court, Mother asserts that the clear-and-convincing-evidence standard negates the evidentiary value of her best-interest stipulations in the MSA and the best-interest testimony at trial, which she characterizes as conclusory and lacking factual support. She acknowledges, however, that her stipulations as to grounds for termination, along with judicial

---

[10] ___ S.W.3d ___, 2017 WL 1684649, at *1 (Tex. App.—Dallas May 2, 2017).

[11] *Id.* at *3-5.

[12] *Id.* at *2, *4-5 (citing *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976)).

[13] *Id.* at *5.

notice of a temporary order, are legally sufficient to support the trial court's findings as to those facts and has abandoned her complaint about the managing-conservator appointment.

## II. Discussion

### A. Standards for Termination

A parent's "right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right."[14] But "[w]hile parental rights are of a constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent–child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."[15] Section 161.001 of the Texas Family Code balances the convergent and divergent interests of parent and child by adopting a two-part standard that permits termination of the parent–child relationship only if (1) the parent's acts or omissions satisfy at least one statutory ground for termination and (2) termination is in the child's best interest.[16] Further recognizing that parent and child share a "commanding" and "fundamental" interest in preventing an erroneous termination of their relationship,[17] both elements require "clear and convincing evidence."[18]

"The function of a standard of proof . . . is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of a factual conclusion for a

---

[14] *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982) (internal quotation marks omitted).

[15] *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

[16] TEX. FAM. CODE § 161.001(b)(1), (2).

[17] *Santosky*, 455 U.S. at 758-59.

[18] TEX. FAM. CODE § 161.001(b); *Santosky*, 455 U.S. at 748.

7

particular type of adjudication."[19]  Because termination of parental rights "is complete, final, irrevocable and divests for all time" the natural and legal rights between parent and child,[20] a court cannot involuntarily sever that relationship absent evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[21] This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake.

A correspondingly searching standard of appellate review is an essential procedural adjunct. Indeed, "[a]s a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance."[22]  We have therefore rejected traditional formulations of legal- and factual-sufficiency standards in favor of standards that honor not only the elevated burden of proof, but also the deference an appellate court must have for the factfinder's role.[23]

The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered.  In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding.[24] Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed

---

[19] *Addington v. Texas*, 441 U.S. 418, 423 (1978) (internal quotation marks omitted).

[20] *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

[21] TEX. FAM. CODE § 101.007; *see Santosky*, 455 U.S. at 260 ("[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship.").

[22] *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

[23] *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002); *C.H.*, 89 S.W.3d at 25.

[24] *J.F.C.*, 96 S.W.3d at 266.

contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true.[25]

Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding. In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding.[26] Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true.[27]

In this case, the trial court terminated Mother's parental rights based on acts and omissions described in section 161.001(b)(1)(N) and (O) and the children's best interests. The statutory grounds to which Mother stipulated permit termination of the parent–child relationship when a parent:

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> > (i) the department has made reasonable efforts to return the child to the parent;
> >
> > (ii) the parent has not regularly visited or maintained significant contact with the child; and
> >
> > (iii) the parent has demonstrated an inability to provide the child with a safe environment; [or]

---

[25] *Id.*

[26] *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[27] *J.F.C.*, 96 S.W.3d at 266.

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.[28]

The second termination prong—best interests—is child-centered and focuses on the child's well-being, safety, and development. A best-interest determination is thus guided by several non-exclusive factors, including: (1) the child's emotional and physical needs; (2) the emotional and physical danger to the child now and in the future; (3) the parental abilities of the individuals seeking custody; (4) the plans for the child by those individuals and the stability of the home; (5) the plans for the child by the agency seeking custody and the stability of the proposed placement; (6) the parent's acts or omissions that may indicate the existing parent–child relationship is improper; and (7) any excuse for the parent's acts or omissions.[29] Proof of acts or omissions providing grounds for termination under section 161.001(b)(1) does not relieve the petitioner from proving the best-interest element, but the same evidence may be probative of both.[30]

Here, the evidence supporting termination was largely in the form of stipulations in the MSA that were recounted by the DFPS caseworker in sworn testimony, taken under judicial notice, and incorporated into the termination decree—all without objection, contrary evidence, or evidence of any excuse. Mother did not renounce or controvert her stipulations as to the statutory requirements for termination and, to the contrary, embraced them at every turn in the trial-court proceedings.

---

[28] TEX. FAM. CODE § 161.001(b)(1)(N), (O).

[29] *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* TEX. FAM. CODE § 263.307 (listing additional best-interest factors).

[30] *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

10

Mother does not assert the MSA is invalid nor argue that it should be set aside, and she concedes the evidence is sufficient to support grounds for termination under sections 161.001(b)(1)(N) and (O). The only issue is whether any evidence supports the trial court's best-interest findings under the clear-and-convincing-evidence standard.[31] As to that matter, we hold Mother's stipulations in the MSA and the reasonable inferences arising therefrom are, under the rationale articulated in *In re K.S.L.*, evidence from which a factfinder could form a firm conviction or belief that termination is in the children's best interests.

## B. Best Interests

Texas policy favors "peaceable resolution of disputes," especially disputes involving the parent–child relationship.[32] To further that policy, the Family Code employs various mechanisms to encourage expeditious resolution of suits affecting the parent–child relationship without the necessity of a full evidentiary trial.

Under Family Code section 153.0071, the trial court can refer a suit affecting the parent–child relationship to mediation and, if the parties agree to settle the matter, a mediated settlement agreement "is binding on the parties" so long as it (1) prominently states (in boldface, capitalized or underlined type) that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the parties' attorneys, if any, who are present when the agreement is signed.[33] The MSA Mother executed meets and exceeds these requirements.

---

[31] Our jurisdiction is limited to questions of law while the weight to be afforded evidence is a matter committed to the court of appeals. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Factual sufficiency is thus at issue in this appeal only to the extent Mother contends the best-interest stipulation in the MSA and similar testimony and statements at the prove-up hearing have zero evidentiary value under the applicable proof standard.

[32] TEX. CIV. PRAC. & REM. CODE § 154.002; *In re Lee*, 411 S.W.3d 445, 449 (Tex. 2013) (orig. proceeding).

[33] TEX. FAM. CODE § 153.0071(c), (d); *see id.* § 101.032 (defining "suit affecting the parent–child relationship" to include "a suit filed as provided by this title in which . . . termination of the parent–child relationship is requested").

11

Section 153.0071(e) provides that a statutorily compliant MSA is also binding on the court, subject to narrow exceptions not alleged here.[34]  Though we held in *In re Lee* that section 153.0071(e) requires trial courts to enforce a properly executed MSA without conducting a broad best-interest inquiry,[35] some courts have determined that subsection (e) does not apply in Chapter 161 termination proceedings and thus neither forecloses a best-interest inquiry in termination cases nor renders an MSA conclusive proof that termination is in a child's best interest.[36]

The question here, however, is not whether the trial court was required to afford conclusive weight to the MSA's stipulations as to the children's best interests,[37] but whether a factfinder is permitted to give any weight to those stipulations under the elevated proof standard.  On this point, we find *In re K.S.L.*,[38] a case involving an affidavit of voluntary relinquishment executed in compliance with Family Code section 161.103, to be instructive.

In *K.S.L.*, state-initiated termination proceedings were resolved after the parents waived their jury-trial demand and signed affidavits of voluntary relinquishment.[39]  The affidavits included provisions affirming (1) the parents had been informed of and understood their parental rights,

---

[34] *Id.* § 153.0071(e), (e-1); *In re Lee*, 411 S.W.3d 445, 447 (Tex. 2013) (orig. proceeding).

[35] *See Lee*, 411 S.W.3d at 455.  *But see id.* at 461-62 (Guzman, J., concurring) (observing a majority of the Court would have held that a trial court could refuse to enter judgment on an MSA that could endanger a child's safety and welfare).

[36] *See In re Morris*, 498 S.W.3d 624, 626 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding) (trial court was not required to render judgment on the MSA in involuntary termination proceedings instituted by private parties); *In re K.D.*, 471 S.W.3d 147, 165-74 (Tex. App.—Texarkana 2015, no pet.) (noting the issue was not presented in *Lee* and holding an MSA is not conclusive evidence of best interest under Chapter 161).

[37] The trial court made express best-interest findings, and the court of appeals reviewed those findings for factual and legal sufficiency.  Neither afforded conclusive weight to the MSA under section 153.0071(e), and the parties here do not argue to the contrary.  Accordingly, the interplay between section 161.001(b)(2)'s best-interest requirement and section 153.0071(e) is not presented.

[38] 538 S.W.3d 107, 111-12 (Tex. 2017).

[39] *Id.* at 109.

(2) "termination of the parent–child relationship is in the best interest of the child(ren)," (3) DFPS would become managing conservator, and (4) the parents relinquished their parental rights and granted them to DFPS and any adoptive parents.[40] As to voluntariness, the affidavits stated: "I freely, voluntarily, and permanently give and relinquish to the Department all my parental rights and duties. I consent to the placement of the child(ren) for adoption or in substitute care by the Department or by a child-placing agency."[41] The affidavits were sworn, as required by section 161.103.[42]

At a brief trial, a DFPS caseworker offered the affidavits and, on request, the court took judicial notice of them.[43] The caseworker "testified that in her belief the relinquishments were in [the child's] best interest and that arrangement had been made for an uncle to adopt her."[44] The trial court signed an order terminating the parent–child relationship, finding clear and convincing evidence that (1) the parents had signed irrevocable affidavits of relinquishment and (2) termination of parental rights was in the child's best interest.[45]

The court of appeals reversed on the basis that the affidavit was insufficient by itself to support a best-interest determination.[46] We held, however, that a statutorily compliant affidavit of voluntary relinquishment is ordinarily sufficient to support a best-interest determination under the

---

[40] *Id.*

[41] *Id.*

[42] *Id.* at 110; TEX. FAM. CODE § 161.103(a).

[43] *K.S.L.*, 538 S.W.3d at 109.

[44] *Id.*

[45] *Id.*; *see* TEX. FAM. CODE § 161.001(b)(1)(K) (authorizing termination of parental rights based on an affidavit of voluntary relinquishment executed before or after institution of termination proceedings).

[46] *K.S.L.*, 538 S.W.3d at 109, 111.

13

clear-and-convincing-evidence standard.[47] Not always, but generally. Not necessarily conclusive on the matter, but certainly ample to clear the elevated evidentiary threshold. We explained:

> [E]ven under a clear-and-convincing standard, we think in the ordinary case a sworn, voluntary, and knowing relinquishment of parental rights, where the parent expressly attests that termination is in the child's best interest, would satisfy a requirement that the trial court's best-interest finding be supported under this higher standard of proof. . . . A parent's willingness to voluntarily give up her child, and to swear affirmatively that this is in her child's best interest, is sufficient, absent unusual or extenuating circumstances, to produce a firm belief or conviction that the child's best interest is served by termination.[48]

Substantively, the affirmations in the *K.S.L.* affidavit are indistinguishable from the stipulations in the MSA Mother signed in this case, except the former expressly affirmed the parents had been advised of their parental rights and the latter expressly admitted to statutory grounds for termination and affirmed Mother had been advised by counsel. As in *K.S.L.*, Mother voluntarily and willingly gave up her children, agreed that it was in her children's best interests to do so, and neither recanted nor opposed the admission of the stipulations into evidence. Though the affidavit in *K.S.L.* was sworn before being admitted into evidence without objection, we perceive no legally cognizable distinction in the evidentiary value between Mother's stipulations here and those in *K.S.L.*

What's more, the grounds for termination Mother stipulated to—(N) and (O)—require acts and omissions bearing on several of the factors that guide the best-interest determination, creating a reasonable inference that Mother was unable to meet the children's emotional and physical needs; the children were endangered physically or emotionally; Mother lacked adequate parenting abilities such that the existing parent–child relationship is improper; and Mother was unwilling or unable to seek out, accept, and complete available services or to effect positive environmental and personal

---

[47] *Id.* at 112.

[48] *Id.*

changes within a reasonable period of time.[49]  The record bears no evidence of any excuse for

Mother's acts or omissions,[50] and the MSA includes primary and alternative plans for placement,

to which Mother unconditionally assented.[51]  Consistent with *K.S.L.*, we hold Mother's stipulations

in the MSA are sufficient to produce a firm belief or conviction that termination of the parent–child

relationship is in the children's best interests.

The statutory requirements for a binding and irrevocable affidavit of voluntary

relinquishment are "exacting" and more "detailed" than those required for a binding and irrevocable

mediated settlement agreement.[52]  The difference in the nature and degree of the statutory

requirements no doubt owes to the fact that termination may be based on an affidavit of

relinquishment signed before a termination suit has been filed—and the right to appointed counsel

---

[49] *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* TEX. FAM. CODE § 263.307.

[50] *Holley*, 544 S.W.2d at 372.

[51] *Id.*

[52] An affidavit voluntarily relinquishing parental rights must be (1) signed by the parent no earlier than 48 hours after the child's birth, (2) witnessed by two credible persons, and (3) verified before a person authorized to take oaths. TEX. FAM. CODE § 161.103(a).  The affidavit must also contain several categories of factual information about the parents and child (name, address, age, etc.) as well as:

- a statement that the parent has been informed of parental rights and duties;

- a statement that the relinquishment is revocable, irrevocable, or irrevocable for a stated period of time;

- if the relinquishment is revocable:

  (1) a statement in boldfaced type concerning the right of the parent signing the affidavit to revoke the relinquishment before, but no later than, the 11th day after its execution; and

  (2) the name and address of a person to whom the revocation is to be delivered; and

- designation of a prospective adoptive parent, the Department of Family and Protective Services (if the department has consented in writing to the designation), or a licensed child-placing agency to serve as the child's managing conservator and the person's or agency's address.

*Id.* § 161.103(b).

has attached—while mediated settlement occurs in the context of a suit affecting the parent–child relationship and on court order.[53] But even though an MSA need not be sworn—and the MSA here was not—the "grave significance" of Mother's stipulations was reflected in the MSA in equivalent fashion and those stipulations were thereafter introduced into evidence without objection.[54]

We need not, and thus do not, decide what defenses to the MSA's enforcement are available to Mother, if any, because none have ever been asserted.[55] Nor do we decide the legal or evidentiary effect of recanting, retracting, or controverting admissions in a statutorily compliant MSA, because Mother consistently affirmed the MSA's termination stipulations. We hold only that the stipulations in the MSA Mother executed—and the reasonable inferences that may be drawn from those stipulations—have evidentiary value for purposes of an evidence-sufficiency review under the clear-and-convincing-evidence standard.

### III. Conclusion

We hold that a parent's voluntary and affirmative statements that termination of parental rights is in the child's best interest in a mediated settlement agreement binding on the parties under section 153.0071(d) of the Family Code can satisfy, and does here, the requirement that a best-interest finding be supported by clear and convincing evidence. Mother does not argue, and

---

[53] *See* TEX. FAM. CODE §§ 153.0071(c), 161.001(b)(1)(K).

[54] *Cf. In re K.S.L.*, 538 S.W.3d 107, 109-10 (Tex. 2017) (noting "the grave significance" of an affidavit of voluntary relinquishment of parental rights is reflected in the detailed requirements set out in Family Code section 161.103).

[55] *See In re Lee*, 411 S.W.3d 445, 455 n.10 (Tex. 2013) (orig. proceeding) (whether Chapter 153 mandates entry of judgment on a statutorily compliant MSA "under any and all circumstances, even where, for example, the agreement '"was illegal or . . . was procured by fraud, duress, coercion, or other dishonest means"'" was neither presented nor decided).

the record does not show, that this case presents any extraordinary circumstances. We therefore affirm the court of appeals' judgment.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED**: October 26, 2018