**Dissent; Opinion Filed January 31, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00712-CV**

**IN THE INTEREST OF A.M., A CHILD**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-30187-2019**

## DISSENTING OPINION
Before Justices Schenck, Reichek, and Carlyle
Opinion by Justice Schenck

The majority affirms the trial court's judgment terminating the parental rights of a father based on evidence he was slow to establish his paternity. Because I disagree that that evidence standing alone is sufficient to support the trial court's finding that the Department's efforts to return the child were reasonable, I dissent.

### *A Parent Is Presumed to Be Fit*

The United States Supreme Court has long held that the Constitution "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion)). Texas jurisprudence underscores this fundamental right and recognizes that it gives rise to a "legal

presumption" that it is in a child's best interest to be raised by his or her parents. *Id.* at 812 (citing *Taylor v. Meek*, 276 S.W.2d 787, 790 (1955)). Although the best interest of the child is the paramount issue in a custody determination, "[t]he presumption is that the best interest of the children" is served "by awarding them" to a parent. *Id.* Thus, the fit-parent presumption is "deeply embedded in Texas law" as part of the determination of a child's best interest. *Id.*

Further, five years before *Troxel*, the Texas Legislature added a statutory parental presumption applicable to original custody determinations:

> [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

TEX. FAM. CODE § 153.131(a).

In the context of this presumption of parental fitness, Texas courts have long-recognized that due process requires a heightened standard of evidence in reviewing decisions to support termination of a parent's rights to his or her child. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also* FAM. §§ 161.001, 161.206(a) (requiring clear and convincing evidence); *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) ("[T]ermination of parental rights 'is complete, final, irrevocable and divests for all time' the natural and legal rights between parent and child . . . .").

### *Father Challenges the Evidence to Support a Finding of Constructive Abandonment*

The family code allows for termination of the parent–child relationship if the court finds by clear and convincing evidence that the parent has:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, *and*:
>
> (i) the department has made reasonable efforts to return the child to the parent;
>
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
>
> (iii) the parent has demonstrated an inability to provide the child with a safe environment

FAM. § 161.001(b)(1)(N). On appeal, Father challenged the evidence to support termination based on this ground, as well as others listed but not addressed by the majority opinion.[1] Specifically, Father argued that he "could not constructively abandon A.M., since the child was removed by the Department at the hospital, and

---

[1] The majority opinion strongly implies Father's brief insufficiently argued the remaining grounds and states his brief failed to challenge the best-interest finding, despite the heading in his brief indicating as much. As my main disagreement is with the majority's conclusion regarding the sufficiency of the evidence to support termination on the ground of constructive abandonment, I will note that several options are available to, and often exercised by, this Court when confronted with inadequate briefing, particularly in a case such as this one on a matter of some constitutional import. *See, e.g.*, TEX. R. APP. P. 38.9, 44.3; *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213 (Tex. 2020) (concluding court of appeals had authority to order additional briefing under appellate rule 38.9); *Crowe v. State*, 595 S.W.3d 317, 320–21 (Tex. App.—Dallas 2020, no pet.) (after concluding at least one arguable issue existed in trial record, appellate court struck *Anders* brief, granted appointed counsel's motion to withdraw, and remanded case to trial court for appointment of new counsel); *see also In re D.T.*, 625 S.W.3d 62, 71 (Tex. 2021) (holding family code evidences "Legislature's intent to afford all parents appearing in opposition to state-initiated parent-rights termination suits the right to *effective* counsel") (emphasis in original); *In re A.F.*, No. 05-17-00392-CV, 2017 WL 4116945, at *3 (Tex. App.—Dallas Sept. 18, 2017, no pet.) (mem. op.) (similar).

never went home with the mother" and that the Department failed to make reasonable efforts to return A.M. to him.

### *Delay in Establishing Paternity Should Not Alone Be Sufficient to Support Termination of Parental Rights*

In previous decisions, this Court has held that when considering whether the Department made reasonable efforts to return the child to the parent, we focus on the Department's conduct rather than the parent's conduct, and that the relevant inquiry is whether the Department made reasonable, not ideal efforts. *See, e.g., In re D.P.G.*, No. 05-20-00652-CV, 2021 WL 2472717, at *9–10 (Tex. App.—Dallas June 17, 2021, no pet.) (mem. op.) (concluding Department failed to establish reasonable efforts when incarcerated father was ordered to undergo services but Department failed to provide list of services or help him find places to complete services); *In re X.A.S.*, No. 05-19-01082-CV, 2020 WL 1042520, at *3 (Tex. App.— Dallas Mar. 3, 2020, no pet.) (mem. op.) (concluding Department established reasonable efforts by facilitating mother's access to job and parenting classes, providing transportation to drug tests, and making other efforts to assist mother complete services). This review is in line with the plain language of the statute as well as the underlying presumption of parental fitness discussed above. However, despite our Court's precedent and the aforementioned presumption of parental fitness, the majority opinion holds that evidence that a parent impeded the Department's attempts to timely adjudicate a parent's parentage is sufficient to establish that the Department made reasonable efforts to return a child to the parent.

–4–

Notwithstanding the opinion's lack of explanation for how Father could have constructively abandoned a child he did not know was his and of whom he had never had possession or access, I cannot agree with the majority's conclusion that evidence that Father delayed establishing his paternity is sufficient, standing alone, to support a finding the Department made reasonable efforts to return the child in support of the termination of his parental rights. Although Mother texted Father a picture of A.M. the day the child was born, she did not identify him as a potential father to the Department until August 2020. Thus, any construed delay or impediment to the Department's reunification efforts attributable to Father would begin then. At that point and for several months, the Department sent to Father's last known address letters informing him that he was named as an alleged father of A.M. and that if he was found to be the father of A.M., "there are court ordered services that you'll need to complete."[2] Thus, the Department indicated to Father—before his paternity was established much less legally presumed—that the State intended to require Father to demonstrate his fitness for parenthood despite our long-standing jurisprudence and statutory presumptions. *See supra*; *see also In re J.W.*, 615 S.W.3d 453, 471 (Tex. App.—Texarkana 2020, no pet.) (discussing untenable dilemma faced by alleged father who was never part of child's household and only suspected his paternity who

---

[2] The record also reflects that messages sent to Father via text and social media indicated an employee of the Department wanted to speak with him concerning a child alleged to be his.

–5–

was nonetheless required by the Department to undergo services and whose refusal to undergo same was later held against him in termination proceedings).

Separate and apart from the sufficiency of the evidence, I disagree with the majority's interpretation of our sister court's opinion it relies on for its analysis. In *In re J.W.*, the Texarkana Court of Appeals held that an alleged father cannot use a delay in adjudication of his parentage that he created to defend against termination of his parental rights. *See* 615 S.W.3d at 473. However, that court went on to note that the father there "knew he was required to submit to genetic testing as of the October 3, 2019 hearing when he first appeared in this case." *See id.* That court also noted that although there was "some evidence" establishing that father's actions impeded the Department's legitimate attempts to timely adjudicate his parentage, there was also additional delay unexplained by the father's actions. *See id.* at 473–74. Thus, the *In re J.W.* court did not reach the conclusion that evidence of a father's delay in establishing his paternity could alone be considered "clear and convincing evidence" to support a finding that the Department made reasonable efforts to return the child to the parent.

Accordingly, I would conclude the trial court's finding of constructive abandonment is not supported by the current state of the law or the trial record, and so I dissent from the majority's conclusion.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

210712DF.P05