**Opinion filed August 31, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-20-00253-CV

_____

## IN RE COMMITMENT OF MARVIN GUNTER

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 20087**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a civil commitment order in which the State sought to commit Appellant, Marvin Gunter, for treatment and supervision as a sexually violent predator pursuant to the Texas Civil Commitment of Sexually Violent Predators Act (the SVP Act). TEX. HEALTH & SAFETY CODE ANN. ch. 841 (West Supp. 2021). A jury found beyond a reasonable doubt that Appellant is a sexually violent predator, and the trial court entered a final judgment and commitment order committing Appellant for treatment and supervision. HEALTH & SAFETY § 841.081.

Appellant contends in two issues that the evidence is legally and factually insufficient to support the jury's sexually violent predator finding. We affirm.

*Background Facts*

On January 26, 2000, Appellant pleaded guilty to three offenses involving sexual misconduct—indecency with a child by contact, sexual assault, and aggravated sexual assault. The trial court assessed his punishment at confinement for twenty years, twenty years, and forty years, respectively, in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly, and the sentences ran concurrently.

Although all three convictions occurred on January 26, 2000, Appellant committed the offenses in 1999, 1998, and 1996. Appellant's offenses were against three of his prepubescent children. He pleaded guilty to indecency with his son, sexual assault of his youngest daughter, and aggravated sexual assault of his oldest daughter.

Appellant testified at the commitment trial. He did not deny having sexual contact with his female children, nor did he deny that he had been convicted of the three sexually violent offenses. He denied indecency with his son, but agreed that he had pled guilty to the charge of doing so. He testified that he knew what he was doing was wrong but that he enjoyed it, and he stopped sexually assaulting his children when they no longer came to his bedroom. He testified that he blames himself for his crimes and feels ashamed and angry at himself for his actions.

He testified that he does not believe he has a continuing problem with "this type of behavior" and that he is not at risk of reoffending. Appellant testified that he is working to complete his sex offender treatment but has faced obstacles in preparing for the commitment trial, which caused him to miss classes. He testified that he is benefiting from the treatment program.

2

Amy Morrison, the sex offender treatment program provider for the TDCJ described Appellant's progress in the program as "needs improving." She further described Appellant's demeanor as moody, angry, argumentative, and lackadaisical, and she stated that Appellant failed to participate in group discussions. Morrison has issued two formal "disciplinary cases" to Appellant for violating group rules—one for possession of pornography and another for absences. She has never needed to grant an extension to other program participants. Morrison testified that Appellant was unable to complete his treatment program in a timely fashion and was given a sixty-day extension to do so. At the time of the hearing, Appellant was still enrolled in the program. However, the program was temporarily discontinued due to the COVID-19 pandemic.

Two experts testified at the commitment trial. The State's expert, Dr. Sheri Gaines, is a licensed medical doctor with a specialization in psychiatry. Dr. Gaines is board certified by the American Board of Psychiatry and Neurology and has more than thirty years of experience in forensic psychiatry. After detailing her experience and training, Dr. Gaines opined that Appellant has a behavioral abnormality. To reach this opinion, Dr. Gaines reviewed "a couple thousand or more" pages of records and conducted a face-to-face interview with Appellant. The interview lasted for two and a half hours, which Dr. Gaines testified was a normal length for a risk assessment evaluation.

Dr. Gaines opined that Appellant has a behavioral abnormality because "he meets the terms of the definition that comes from the statute, and because he has risk factors that make him likely to repeat the acts for which he is convicted." She explained that a "risk factor" is "something that has been studied that has been identified in literature as making something more likely to happen." By contrast, a "protective factor" is one that statistically reduces an individual's risk of reoffending.

Among the risk factors that Dr. Gaines identified were sexual deviancy in the form of pedophilia. Dr. Gaines diagnosed Appellant with pedophilic disorder using the Diagnostic and Statistical Manual of Mental Disorders, fifth edition (DSM-5). Other risk factors include the different types of sexual acts and abuse on each victim; the occurrence of acts over many years; psychopathic traits like lack of remorse, lying, and manipulation; offending under the influence of drugs and alcohol; victim blaming; and offending in a public place.

Dr. Gaines also identified some protective factors, including Appellant's age and his completion of his GED and other educational programs while in prison. However, Dr. Gaines noted that Appellant's age was not a completely protective factor because Appellant's original offenses occurred when he was in his forties and the academic literature indicates that reoffending is less likely once a person reaches the age of thirty. Thus, Appellant was offending at an age when the literature would indicate he was less likely to offend.

Finally, Dr. Gaines noted that Appellant had not completed his treatment program, did not have stable plans post-release, and intended to live with another sex offender. In her opinion, Appellant's pedophilic disorder combined with his risk factors constituted a behavioral abnormality as defined in the Health and Safety Code because it affected his emotional and volitional capacity.

Appellant's expert, Dr. Stephen Thorne, Ph.D., is a licensed psychologist with a practice in forensic psychology. He reviewed the same documents as Dr. Gaines, scored a Static-99 actuarial and a PCLR, and conducted a two-hour interview with Appellant. Like Dr. Gaines, Dr. Thorne diagnosed Appellant with pedophilic disorder. He opined that Appellant does not meet the criteria for having a behavioral abnormality that makes him likely to engage in an act of predatory violence.

He performed a Hare-PCLR on Appellant, an actuarial designed to identify psychopathic traits in an individual. Appellant's PCLR score was 23 out of 40,

4

which Dr. Thorne said is "considered to be in the moderate range for psychopathy, at the high end of the moderate range." Dr. Thorne explained that, although Appellant has some antisocial or psychopathic traits, he did not believe Appellant to be a psychopath. In addition to the PCLR, Dr. Thorne scored a Static-99 on Appellant, an actuarial instrument designed to identify traits connected to sexual recidivism. Dr. Thorne scored Appellant as a "negative two," which "is characterized as being in the very low range."

Dr. Thorne identified protective factors, which included Appellant's age, his single sentencing occasion, his lack of a mental illness diagnosis that would affect his impulse control (i.e., schizophrenia or bipolar disorder), his ability to maintain stable employment, and the fact that his offenses were limited to familial victims rather than strangers. He also opined that the low score on the Static-99 was a protective factor.

Dr. Thorne noted that most of the risk factors are included or accounted for in the PCLR and Static-99 actuarial. However, the risk factors that he identified included Appellant's lack of social support, antisocial behavior, sexual deviancy in the form of pedophilic disorder, and offending under the influence of alcohol. He also opined that offending in a public place was a risk factor on some assessment instruments, but he stated that Appellant's offending in a public place did not sway his ultimate opinion. Finally, Dr. Thorne testified that he was concerned that Appellant had not completed his treatment program. He stated that if Appellant was unsuccessful in completing the program, his "ultimate opinion in this case would probably change."

*Analysis*

Appellant raises two issues for our review: he challenges the legal and factual sufficiency of the jury's finding that he is a sexually violent predator. The SVP Act provides for the civil commitment of sexually violent predators based on legislative

5

findings that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." HEALTH & SAFETY § 841.001.

A person is a sexually violent predator if the person "(1) is a *repeat* sexually violent *offender*; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (emphasis added). The legislature defines a "repeat sexually violent offender" as a person who is convicted of "more than one sexually violent offense and a sentence is imposed for at least one of the offenses." *Id.* § 841.003(b). "Sexually violent offense" is defined in the SVP Act to include enumerated Penal Code offenses. *Id.* § 841.002(8).[1] Finally, "behavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

A commitment proceeding under the SVP Act is a civil case that incorporates the "beyond a reasonable doubt" burden of proof from criminal cases. *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020); *In re Commitment of Stratton*, 637 S.W.3d 870, 875 (Tex. App.—Eastland 2021, no pet.). Thus, to civilly commit a person as a sexually violent predator, the State must prove the above elements beyond a reasonable doubt.

---

[1]Appellant's underlying convictions are for indecency with a child by contact, sexual assault, and aggravated sexual assault; all of which are "sexually violent offenses" under the Health and Safety Code. *See* HEALTH & SAFETY § 841.002(8); TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.011, 22.021 (West 2019 & Supp. 2021).

*Directed Verdict*

In his first issue, Appellant contends that the evidence is legally insufficient to support the trial court's finding that he is a "repeat sexually violent offender."

We note that although raised as a legal sufficiency issue, the trial court granted a directed verdict in favor of the State as to element one—finding that Appellant is a repeat sexually violent offender—and Appellant's argument under his first issue addresses the trial court's directed verdict. *See* HEALTH & SAFETY § 841.003(a). We review the grant of a directed verdict in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *In re Commitment of Talley*, 522 S.W.3d 742, 750 (Tex. App.—Houston [1st Dist.] 2017, no pet.). A directed verdict is proper when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law. *See Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.). In a civil commitment case, Texas courts have uniformly held that when the undisputed evidence establishes that the defendant has been convicted of more than one sexually violent offense and a sentence was imposed for one of them, a partial directed verdict that the defendant is a repeat sexually violent offender is appropriate. *See Stratton*, 637 S.W.3d at 876–77 (collecting cases).

Here, the trial court's grant of a partial directed verdict that Appellant is a repeat sexually violent offender was proper because Appellant had been convicted of three sexually violent offenses and sentences were imposed for all three. The State introduced three judgments of conviction for sexually violent offenses. Appellant conceded that he was convicted and sentenced for all three offenses. Thus, the partial directed verdict in favor of the State was proper because Appellant is a repeat sexually violent offender as a matter of law. Accordingly, we overrule Appellant's first issue.

*Factual Sufficiency*

In Appellant's second issue, he contends that there is factually insufficient evidence to support the jury's finding that he has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. We disagree.

The standard of review for a factual-sufficiency review differs from the evaluation for legal sufficiency. A "factual-sufficiency review is premised on consideration of the entire record." *Stoddard*, 619 S.W.3d at 674 (citing *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018)). As with the legal sufficiency analysis, there is still an assumption that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. *Id.* at 674. "However, disputed evidence that a reasonable factfinder could *not* have credited in favor of the finding is treated differently" in a factual sufficiency analysis. *Id.* at 676. Thus, in sexually violent predator cases, "where the burden of proof is beyond a reasonable doubt, the evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the [sexually violent predator] finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *Id.* at 674–75. A reviewing court's mere disagreement with the factfinder "as to the proper evidentiary weight and credibility cannot be the basis of a reversal on factual-insufficiency grounds." *Id.* at 677.

To support his contention, Appellant again directs us to his "single sentencing occasion." Appellant also contends that he has no serious psychological issues, has a history of maintaining employment, and has only two incidents of misconduct during his incarceration.

We first turn to evidence supporting the verdict. Both experts diagnosed Appellant with pedophilic disorder and agreed on several risk factors present in

8

Appellant's case. The risk factors include sexual deviancy, offending in a public place, offending while under the influence of drugs or alcohol, and antisocial behaviors. Additionally, all the witnesses at trial testified that Appellant had not successfully completed his sex offender treatment program. Finally, Dr. Gaines opined that Appellant has a behavioral abnormality.

Contrary to the verdict, Dr. Thorne opined that Appellant does not have a behavioral abnormality. Dr. Thorne testified that a strong factor to consider is whether a person has reoffended after release. However, he recognized that because these are Appellant's first convictions, Appellant has never been released after a conviction. Both experts recognized Appellant's age as a protective factor, but only Dr. Thorne recognized Appellant's lack of additional psychological diagnoses as protective.[2] Dr. Thorne also listed Appellant's history of stable employment and his lack of nonfamilial (stranger) victims as protective factors.

In light of the entire record, viewing the supporting and contrary evidence, we hold that the jury could have determined, beyond a reasonable doubt, that Appellant has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence and that Appellant is a sexually violent predator.

Within his second issue, Appellant also contends that the State failed to prove that he falls in the "small but extremely dangerous group of sexually violent predators" mentioned in the legislative findings of the SVP Act. HEALTH & SAFETY § 841.001. However, the Texas Supreme Court rejected this argument in *Stoddard*, finding that the language in the legislative findings is not an element of the statute. 619 S.W.3d at 677 ("This 'small but extremely dangerous group' language, contained in the Act's legislative findings, is not part of the statute's

---

[2]Dr. Gaines testified that the absence of a risk factor is not a protective factor.

definition of 'sexually violent predator' and was not an element the jury was required to find.").

Because the "small but extremely dangerous" language is not an element, and because the evidence was such that the jury could have determined that Appellant has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, we overrule Appellant's second issue. *See* HEALTH & SAFETY § 841.001, .003(a)(2).

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

August 31, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.