

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-25-00236-CV

**IN THE INTEREST OF G.M.M.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2024PA00084
Honorable Kimberly Burley, Judge Presiding

Opinion by:      Velia J. Meza, Justice

Sitting:         Lori I. Valenzuela, Justice
                 Lori Massey Brissette, Justice
                 Velia J. Meza, Justice

Delivered and Filed: August 27, 2025

AFFIRMED IN PART, REVERSED AND RENDERED IN PART

Mother appeals the trial court's judgment terminating her parental rights to G.M.M.[1]

Mother challenges the sufficiency of the evidence supporting the trial court's findings under Texas

Family Code section 161.001. We agree the evidence is insufficient to support findings under

subsections (N) and (O) and reverse that portion of the trial court's termination order.[2]

---

[1] To protect the identity of the child and persons through whom the child could be identified, we will refer to appellant as "Mother" and to the child by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8. Two presumed fathers were also terminated by the trial court. Neither appealed the judgment.

[2] Mother does not challenge the trial court's conservatorship finding under Texas Family Code section 153.371. TEX. FAM. CODE § 153.371.

**BACKGROUND**

On January 18, 2024, the Department of Family Protective Services (the "Department") initiated this case by filing its original petition for termination.

A two-day trial took place on January 15, 2025, and March 14, 2025. The Department introduced five documents into evidence, and called four witnesses. However, only two exhibits and three witnesses pertain to Mother. State's Exhibit A was the Status Hearing Order from March 22, 2024. State's Exhibit B was Mother's Family Service Plan signed on February 28, 2024.

Department investigator Johnathan Tatlow testified that the case began in June of 2023 when he became aware of a physical altercation between Mother and the child's grandmother, E.D. This altercation occurred in the child's presence.

Mother proved difficult to track down, and the Department did not make contact with her until January 17, 2024. On such date, Investigator Tatlow received word from Special Investigator Johnny Longoria that Mother was at her friend's residence. Investigator Tatlow rendezvoused with Special Investigator Longoria and local law enforcement at the residence. Mother attempted to flee with G.M.M. leading to her arrest. A methamphetamine pipe was found on her person.

At trial, Investigator Tatlow testified that while attempting to set up a safety plan, Mother "refused to follow through." The Department ultimately removed G.M.M. and placed her with E.D.

Mother testified about her circumstances and efforts to comply with the family service plan. Mother lived in an apartment with G.M.M. prior to removal. Six months into the case, Mother was arrested for the assault against E.D. Mother was charged with aggravated assault, took a plea deal and was granted deferred adjudication, ten years of probation. As a condition of probation, Mother was required to enter the Texas Substance Abuse Felony Punishment Facility ("SAFP").

SAFP is a substance abuse treatment program within the Texas Department of Criminal Justice. Thus, Mother was housed within a prison facility to complete the in-patient portion of SAFP. Mother stated she successfully completed the in-patient portion.

Mother testified that the SAFP services she completed were similar to the services required under the family service plan. Following completion, Mother testified that she was reincarcerated due to an alleged probation violation in a separate criminal case. While hopeful that her probation will be reinstated in that case, Mother did not know how it would be resolved.

Mother's caseworker, Morgan Nava-Munoz, testified that Mother's family service plan required her to "complete parenting classes; substance abuse assessment, and to follow all recommendations from that assessment; random drug testing; individual counseling; and[] a psychological evaluation." The record indicates that Ms. Nava-Munoz was unable to verify whether Mother completed her family service plan requirements while in SAFP. However, such is not evidence that she did not do so. Instead, Ms. Nava-Munoz stated that Mother only failed to complete individual counseling. She explained that Mother failed to engage in individual counseling prior to her incarceration because it was difficult to find a provider that would work around Mother's work schedule. While Ms. Nava-Munoz conceded that Mother completed individual counseling while in SAFP, she stated the counseling was "mostly related to her substance abuse and anger management," and did not address Mother's mental health. Thus, Mother would need to engage in a different type of counseling to complete her family service plan.

The trial court also heard evidence pertaining to Mother's visitation and communications with G.M.M. Ms. Nava-Munoz stated that prior to Mother's incarceration, Mother attended "almost every single" scheduled virtual visit with G.M.M. And with regards to in-person visits, Ms. Nava-Munoz stated that it was difficult to schedule such visits "due to the distance between

[Mother] and [G.M.M.'s]" placement. While Ms. Nava-Munoz was aware of one scheduled in-person visit, the record is unclear whether Mother failed to attend such scheduled visit. Regardless, Ms. Nava-Munoz testified that the last virtual visitation between Mother and G.M.M. occurred "right before her incarceration." Once the Department became aware of a no-contact order between Mother and E.D., it ceased scheduling virtual visits. Consequently, Mother was directed by the Department to write letters to G.M.M. And it is uncontested that while Mother was incarcerated for nine months leading up to the trial, she wrote 25 letters which were appropriate, loving, and positive.

At the conclusion of trial, the court terminated Mother's parental rights based on Texas Family Code subsections 161.001(b)(1)(N) and (O). While the court highlighted its issue with the fact that Mother was incarcerated without a scheduled release date and that the no-contact order with G.M.M.'s grandmother was still active, neither of those points serve as support for termination under (N) or (O). Ultimately, it found that although Mother wrote 25 letters while incarcerated, they were insufficient to maintain significant contact with G.M.M. Thus, the trial court terminated Mother's parental rights under ground (N). As for ground (O), the trial court found that Mother's failure to engage in individual counseling prior to her incarceration was sufficient to terminate her parental rights. The trial court further appointed the Department as permanent managing conservator of G.M.M. pursuant to section 153.371 of the Texas Family Code.

**ANALYSIS**

1. Standard of Review

Because of the gravity terminating parental rights presents, the law mandates a heightened burden of proof: clear and convincing evidence. *In re A.Y.C.*, 665 S.W.3d 800, 809 (Tex. App.—Houston [14th Dist.] 2023, pet. denied). This mandate also heightens our standards of review for evidentiary sufficiency. *Id.* at 809–810. Consequently, our review of termination findings determines "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). However, the factfinder is the sole judge of the weight and credibility given to the evidence under our evidentiary sufficiency standards. *In re J.O.H.*, 617 S.W.3d 596, 598 (Tex. App.—San Antonio 2020, no pet.).

"In conducting a legal-sufficiency review, [we] cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631 (footnote omitted).

On the other hand, in a factual sufficiency review we confront the disputed or contrary evidence within the record. *In re A.L.S.*, 660 S.W.3d 257, 263 (Tex. App.—San Antonio 2022, pet. denied). Consequently, if we determine that the disputed or contrary evidence "would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true" then the evidence is factually insufficient. *Id.*

2. <u>The Evidence Is Legally Insufficient to Support the Trial Court's Finding Under Subsection (N)</u>

To terminate parental rights under subsection (N), the Department must establish that (1) the child has been in the permanent or temporary managing conservatorship of the Department for not less than six months; (2) it has made reasonable efforts to return the child to the parent; (3) the parent has not regularly visited or maintained significant contact with the child; and (4) the parent has demonstrated an inability to provide the child with a safe environment. TEX. FAM. CODE § 161.001(b)(1)(N). On appeal, Mother contends that she regularly visited G.M.M. prior to her incarceration and maintained significant contact via letters thereafter. Thus, she argues, the evidence is insufficient to support termination of her parental rights under subsection (N). We agree.

"A parent fails to regularly visit or maintain significant contact with the child if the parent fails to take advantage of the visitation rights or if the visits are intermittent or sporadic." *In re J.I.P.*, No. 04-20-00549-CV, 2021 WL 1269913, at *3 (Tex. App.—San Antonio Apr. 7, 2021, no pet.) (mem. op.) (quoting *In re S.S.*, 11-05-00083-CV, 2006 WL 1285125, at *3 (Tex. App.—Eastland May 11, 2006, no pet.) (mem. op.)). Although incarceration may render it difficult for a parent to maintain significant contact with a child, it is not impossible. *In re D.S.A.*, 113 S.W.3d 567, 574 (Tex. App.—Amarillo 2003, no pet.). "While the child may not be able to live with the parent in a jail cell, it would seem that the parent could nonetheless pursue a significant relationship with the [child] through, at the very least, written correspondence." *Id.* In this case, since Mother was not incarcerated throughout the entire case, we must examine Mother's efforts to regularly visit or maintain significant contact with G.M.M. prior to, and after, her incarceration.

Prior to her incarceration, Mother attended "almost every single" scheduled virtual visit with G.M.M., with the last such visit occurring "right before her incarceration." With regards to

in-person visits, the record demonstrates that these were difficult to schedule due to the distance between Mother's home and G.M.M.'s placement. And there is no evidence that Mother failed to attend in-person visits.

After Mother's incarceration—and after the Department became aware of a no-contact order between Mother and E.D.—the scheduling of virtual visitations ceased. Consequently, Mother began writing letters to G.M.M., as directed by the Department. During the nine months leading up to trial, Mother sent G.M.M. 25 appropriate, loving, and positive letters.

Because Mother took full advantage of her visitation rights before incarceration and maintained significant contact with G.M.M. through letters during her incarceration, a reasonable factfinder could not have formed a firm belief or conviction that Mother failed to regularly visit or maintain significant contact with G.M.M. *D.S.A.*, 113 S.W.3d at 574.Therefore, the evidence is legally insufficient to support termination under subsection (N) and we sustain Mother's first issue.

Since only one predicate finding is necessary to support a judgment of termination, we next address Mother's challenge to subsection (O). *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

3. The Evidence Is Legally Insufficient to Support the Trial Court's Finding Under Subsection (O)

Mother contends that the evidence presented at trial is legally insufficient to support the termination of her parental rights under Texas Family Code section 161.001(b)(1)(O). We agree.

A parent's parental rights may be terminated if—by clear and convincing evidence—the court finds that (1) the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child (2) who has been in permanent or temporary managing conservatorship of the Department for not less than nine

months, and (3) as a result of the child's removal from the parent under Chapter 262 of the Family Code for the abuse or neglect of the child. TEX. FAM. CODE § 161.001(b)(1)(O).[3]

"Texas courts generally take a strict approach to subsection (O)'s application." *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). However, "the predicate ground for termination under (O) cannot be proven by clear and convincing evidence if premised on a plan requirement that is unwritten, and thus supplied only by the caseworker's oral testimony, or on one that is written but vague." *In re R.J.G.*, 681 S.W.3d 370, 373 (Tex. 2023). And a "parent's technical noncompliance" may not support termination under (O). *Id.* at 382. As indicated by the supreme court in *R.J.G.*, a technical noncompliance can arise when "the plan requires a parent to attend classes with a specified service provider and the parent goes elsewhere." *Id.*

The family service plan admitted at trial provided the following requirements under a heading entitled "Coping Skill[]/Mental Health":

> [Mother] will actively engage in counseling with [name of a specified provider] . . . . She will regularly attend and actively participate in individual counseling sessions until successfully discharged by the service provider. She will also follow all recommendations made by her individual therapist. [Mother] will sign a release of information for the Department to verify her participation and progress. She will demonstrate an understanding and utilization of the skills acquired during participation in counseling.

It is uncontested that Mother failed to engage in counseling with the service provider specified in the family service plan. However, Mother engaged in individual counseling once a week while working through SAFP. Through this individual counseling, Mother testified that she "focused a lot on anger management and coping skills, and identifying sensitive life triggers." She was taught to "hav[e] a plan—a better plan to handle things and know how to conduct the future

---

[3] We note that the Legislature repealed subsection (O), effective September 1, 2025. *See* Act of May 16, 2025, 89th Leg., R.S., H.B. 116, §§ 2, 3. The repeal affects all suits pending in a trial court on the effective date. *Id.*

interactions with people." She also learned how to better respond to situations that trigger or anger her by using "thought-stopping processes and breathing techniques."

Mother's caseworker, Ms. Nava-Munoz conceded that Mother attended "individual counseling" while in SAFP. But Ms. Nava-Munoz stated that this individual counseling failed to comply with the family service plan since it did not "address her mental health."

The family service plan admitted into evidence does not specify that "mental health" be the primary topic addressed by individual counseling. Nor does the plan provide "any particular benchmark, such as participating in a specified number of individual sessions or passing a test of any sort." *R.J.G.*, 681 S.W.3d at 380. Rather, the family service plan requires Mother to "engage in . . . regularly attend[,] and actively participate in individual counseling until successfully discharged by the service provider."

Because the record unequivocally established that Mother engaged in, regularly attended, and actively participated in individual counseling to successfully complete SAFP, we hold the evidence is legally insufficient, even when viewed in the light most favorable to the fact-finder, to support termination of her parental rights pursuant to ground (O). To hold otherwise would authorize courts to measure a parent's performance of a service plan "against a previously undisclosed requirement." *Id*. As such, we sustain Mother's second point of issue.

## CONCLUSION

Because we have sustained Mother's challenges as to every predicate finding, we need not address the trial court's best interest finding under Texas Family Code section 161.001(b)(2). *See A.V.*, 113 S.W.3d at 362; TEX. R. APP. P. 47.1. Accordingly, we reverse the portion of the trial court's judgment that terminated Mother's parental rights and render judgment denying the Department's petition for termination of Mother's parental rights. We affirm the trial court's judgment in all other respects, including the trial court's unchallenged conservatorship finding

naming the Department as managing conservator of G.M.M. pursuant to Texas Family Code section 153.371.

Velia J. Meza, Justice