**AFFIRMED and Opinion Filed March 28, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00874-CV

## IN THE INTEREST OF S.L., J.L., AND L.L., CHILDREN

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-53803-2020**

## MEMORANDUM OPINION PER CURIAM

Before Justices Schenck, Smith, and Garcia

Father appeals the trial court's final order terminating his parental rights to S.L. and challenges several other temporary orders and rulings throughout the lengthy proceeding.[1]  He raises nine issues on appeal:  (1) whether the trial court erred by conferring sole managing conservator status upon an individual without standing; (2) whether the trial court erred by refusing to allow a contested hearing on a recusal motion; (3) whether the trial judge's assignment complied with Texas Government Code section 74.055(b); (4) whether the trial court denied Father his constitutional right to due process by refusing to allow him to testify in his pro se

---

[1] The order also terminated Father's rights to J.L. and L.L.  Father's brief only challenges the termination of his rights to S.L.  We, therefore, limit our discussion to the termination of Father's rights to S.L.  *See* Tex. R. App. P. 47.1.  We affirm the termination of Father's parental rights to J.L. and L.L.

capacity; (5) whether the trial court erred when it conditioned Father's contact with the children on the payment of $15,000; (6) whether the appointed guardian ad litem acted outside her statutory role; (7) whether the trial court denied Father his constitutional right to due process by refusing to allow him to testify in his pro se capacity;[2] (8) whether the trial court violated Father's "fundamental rights to family integrity" guaranteed by the Constitution; and (9) whether the trial court violated his due process rights under Texas Family Code sections 161.001(b)(1)(A)–(U), (b)(2). We overrule Father's issues and affirm the trial court's termination of his parental rights to S.L.

### Briefs and Evidence Filed Under Seal

Before considering Father's issues, we must address a preliminary matter. In both this Court and the trial court, the record is filed under seal. The parties' briefs are likewise filed under seal.

This raises a significant dilemma on appeal because our opinions are a matter of public record, even when designated as memorandum opinions pursuant to rule of appellate procedure 47.4. *See* TEX. GOV'T CODE ANN. § 552.022(a)(12) ("final opinions, including concurring and dissenting opinions, and orders issued in the adjudication of cases" are "public information"); TEX. R. CIV. P. 76a.1 ("No court order or opinion issued in the adjudication of a case may be sealed."). Facts that are

---

[2] Father has not alleged a separate due process violation from the one raised in issue four. His seventh issue is repetitive and therefore overruled.

necessary for us to dispose of the issues presented by this appeal are included in the sealed record.

We have made every effort to preserve the confidentiality of the information sealed. But we cannot decide this appeal without mention of some key facts. *See MasterGuard L.P. v. Eco Techs. Int'l LLC*, 441 S.W.3d 367, 371 (Tex. App.—Dallas 2013, no pet.); *R.V.K. v. L.L.K.*, 103 S.W.3d 612, 614–15 (Tex. App.—San Antonio 2003, no pet.) (court "attempted to strike a fair balance" between the parties' interest in keeping the sealed portion of record confidential with interest of court and public in fulfilling responsibilities as court of record). We have, however, avoided specific details as much as possible and have made some references deliberately vague to avoid disclosure of sensitive details.

### Procedural Background

Mother and Father divorced in July 2015. The court appointed Mother sole managing conservator of their three children, S.L., J.L., and L.L. Father was appointed possessory conservator. Mother and Father seemingly got along and worked together to abide by the custody arrangement for several years.

In July 2020, Father filed a petition to modify the parent-child relationship. He attached an affidavit from his wife (the children's stepmother), in which she alleged Mother was neglecting S.L., and S.L. was the victim of potential sexual abuse. In August 2020, Mother filed her counter-petition to modify the parent-child relationship.

Over the next several months, Mother and Father filed various emergency motions and requests for temporary orders. Father and his family were unhappy with several of the rulings and believed the "system" was not taking into account S.L.'s best interest. Father began posting information about the case on social media, which at one time resulted in over three hundred calls to CPS from strangers concerning S.L.'s well-being. He also posted the personal information of Mother, the judge, and the attorneys involved in the case encouraging justice for S.L. The trial court eventually signed a "gag" order preventing Father, his attorneys, and his agents from posting and/or publicizing certain information about the case.

In April 2021, Mother filed her second amended counterpetition to modify the parent-child relationship, in which she requested that the court terminate Father's parental rights to the children. She alleged Father (a) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; (b) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; (c) had been the major cause of the failure of the children to be enrolled in school as required by the Texas Education Code; and (d) had been the major cause of the children's absence from the home without the consent of the parents or guardian for a substantial length of time or without the intent to return.

The court held a termination hearing in September 2021. Father failed to appear. According to S.L.'s grandfather, S.L. and Father were in Arizona three weeks before the hearing, but he was not aware of their location at that time.

The trial court terminated Father's parental rights to all three children and appointed Mother managing conservator. This appeal followed.

**Pro Se Status**

Numerous attorneys represented Father in the trial court, but they subsequently withdrew as his counsel. During the last several trial court hearings, Father represented himself pro se. He continues to represent himself pro se on appeal.

We will construe pro se pleadings and briefs liberally; however, we hold pro se litigants to the same standards as licensed attorneys. *See Wash. v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). Pro se litigants are not exempt from the rules of procedure. *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves."). This includes error preservation rules. *Harrison v. Reiner*, 607 S.W.3d 450, 464 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Moreno v. Silva*, 316 S.W.3d 815, 817

(Tex. App.—Dallas 2010, pet. denied).  With these parameters in mind, we now consider Father's issues.

## Appointment of Temporary Sole Managing Conservator

In his first issue, Father argues the trial court erred by appointing S.L.'s aunt as temporary sole managing conservator in a July 2021 temporary order.  He contends the erroneous ruling allowed a party without standing to have exclusive rights and duties associated with S.L.

First, Father did not comply with the briefing rules for appellate procedure. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").  Although he included this issue in his "Issue Presented" section, he only provided two short paragraphs in his "Summary of the Argument."  He failed to provide a clear and concise argument, with appropriate citations to the record, and relevant authority in support of his argument. *Id*.  When a party fails to adequately brief a complaint, he waives the issue on appeal. *See Hogan v. Aspire Fin., Inc*., No. 05-19-00385-CV, 2021 WL 2176929, at *3 (Tex. App.—Dallas May 28, 2021, pet. denied) (mem. op.).  Because Father failed to comply with rule 38.1(i), we conclude he waived review of his complaint.

Even if Father adequately briefed this issue, he would not succeed.  It is well-settled that a temporary order is superseded by entry of a final order of termination, thereby rendering moot any complaint about the temporary order. *See Interest of*

–6–

*A.M.C.*, No. 05-19-00184-CV, 2020 WL 4726639, at *3 (Tex. App.—Dallas Aug. 14, 2020, no pet.) (mem. op.); *see also In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.). The trial court's termination order named Mother sole managing conservator of the children thereby ending the aunt's role as temporary sole managing conservator. The final termination order mooted Father's complaint. We overrule Father's first issue.

### Motion to Recuse and Disqualify the Assigned Judge

In his second and third issues, Father argues the trial court erred by refusing to conduct a hearing on his recusal motion and that the appointed judge's assignment failed to comply with Texas Government Code section 74.055(b).

Although Father listed his second issue in his "Issue Presented" section, he failed to address and expand the argument in his argument section or anywhere else in his brief. Because Father failed to comply with appellate rule 38.1 by providing a clear and concise argument, with appropriate citations to the record and relevant authority in support of his argument, he waived his complaint about any failure to conduct a hearing on the recusal motion. *See* TEX. R. APP. P. 38.1(i); *Hogan*, 2021 WL 2176929, at *3.

To the extent Father challenges the assigned judge's qualifications under Texas Government Code section 74.005(b), he likewise waived his issue. The judge was assigned the case on September 8, 2020, and Father filed his recusal motion on May 27, 2021. Section 74.053(c) provides that "An objection under this section

–7–

must be filed no later than the seventh day after the date the party receives actual notice of the assignment or before the date of the first hearing or trial, including pretrial hearings, commences, whichever date occurs earlier." TEX. GOV'T CODE ANN. § 74.053(c). Father waited over eight months to file his recusal motion challenging the assigned judge's qualifications. Father has not argued that he received actual notice of the assignment outside of the seven-day deadline for objecting. Moreover, Father filed the motion after the May 20, 2021 hearing, at which point the assigned judge had presided over the case for months.

Because Father neither objected within seven days of receiving notice of the assignment nor before the first hearing, he waived his complaint. *See id*.; *see also Ferguson v. Tex. Dep't of Transp*., No. 11-15-00110-CV, 2017 WL 3923510, at *8 (Tex. App.—Eastland Aug. 31, 2017, no pet.) (mem. op.) ("When a judge is assigned, a party that objects to the assignment must file an objection or motion within seven days of receiving notice of the assignment."). We are mindful of Father's pro se status; however, pro se litigants are not exempt from the rules of procedure, which includes error preservation rules. *Harrison*, 607 S.W.3d at 464. Father's third issue is overruled.

### Refusal to Allow Father to Testify Pro se

In his fourth issue, Father argues the trial court refused to allow him to testify while acting pro se, which denied him due process. Our review of the record does not support Father's assertion.

While the trial court did not allow Father to testify during the May 2021 hearing, the court told Father he could make any arguments he wanted. Instead of making any further arguments, he called Mother to the stand and questioned her.

Moreover, the May hearing was continued; therefore, the trial court still had the opportunity to ameliorate any alleged due process violations when the hearing recommenced. The record indicates the court did just that. When the hearing resumed in July, Father testified extensively about the family's past and current situation without any restriction from the trial court. Before the hearing ended, the trial court asked Father if he had "any desire to put any further testimony on the record on any of the matters the Court has addressed this morning." Father did not add anything further.

Father has not argued that his due process rights were violated during any other hearings. We note that when given the opportunity to appear and argue at the most important hearing of the children's lives, the termination hearing, Father failed to attend. Instead, he absconded with S.L. to an undisclosed location.

Accordingly, Father failed to show the trial court violated his due process rights. Father's fourth issue is overruled.

**Conditioning Contact With Children on Payment of $15,000**

In his fifth issue, Father argues the trial court erred by including language in a July 2021 temporary order that required him to pay $15,000 to have contact with S.L. We disagree with Father's interpretation of the temporary order.

Father argues the requirement violates section 153.001(b) of the family code, which states, "A court may not render an order that conditions the right of a conservator to possession of or access to the child on the payment of child support." *See* TEX. FAM. CODE ANN. § 153.001(b). The temporary order did not condition Father's contact with S.L. on the payment of child support, but instead ordered payment of the cost of her enrollment in a therapy program and conditioned his contact based on payment of therapy. Regardless, even if we concluded the cost of therapeutic services was part of Father's child support, the temporary order was superseded by entry of the final order of termination, thereby rendering moot any complaint about the temporary order. *See A.M.C.*, 2020 WL 4726639, at *3; *see also A.K.*, 487 S.W.3d at 683. We overrule Father's fifth issue.

## Appointment of Guardian Ad Litem

In his sixth issue, Father argues the guardian ad litem acted outside of her statutory role. Again, the record belies Father's argument.

Family Code section 107.002(c)(4) states that a guardian ad litem is entitled to attend all legal proceedings in the case but may not call or question a witness or otherwise provide legal services unless the guardian ad litem is a licensed attorney who has been appointed in the dual role. TEX. FAM. CODE ANN. §107.002(c)(4). Here, Father objected during the May 2021 hearing when the guardian ad litem began asking questions.

The court reviewed section 107.002(c)(4) and then asked the guardian ad litem if she was a licensed attorney. The guardian ad litem answered affirmatively, and the trial court overruled Father's objection. Subsequently, during the July 2021 hearing, the guardian ad litem again confirmed her dual role with the trial court.

Under these facts, we conclude the trial court did not err. The court confirmed the guardian ad litem was a licensed attorney prior to allowing her to ask questions and participate in the hearings. Thus, the court adequately complied with section 107.002(c)(4). We overrule Father's sixth issue.

## Termination of Parental Rights

In his eighth and ninth issues, Father argues the trial court violated his "fundamental rights to family integrity" as guaranteed by the Constitution and violated his due process rights under family code section 161.001(b)(1)(A)-(U).

Father spends a great deal of time arguing about his "fundamental rights to family integrity"; however, the case law he relies on is wholly inapplicable to the facts of this case. For instance, he cites *Troxel v. Granville*, 530 U.S. 57 (2000), to support his claim that "so long as a parent adequately cares for his or her children (i.e., is fit) there will normally be no reason for the State to interject itself into the private realm of the family . . . ." *Troxel* did not involve termination of parental rights but rather visitation rights of grandparents, an issue not relevant to this case.

Father also argues that a family has the right to make "private decisions about what is best for the family unit, free from unwarranted state intervention." Father's

–11–

arguments and cited authority could be relevant if the State had initiated the termination; however, Mother filed the petition for termination. Thus, there was no intervention by the State into any of his "fundamental rights to family integrity." Father's eighth issue is overruled.

We liberally construe Father's ninth issue as challenging the legal sufficiency of the evidence supporting termination under section 161.001(b)(1)(D) and (E).[3] Father has not challenged the trial court's finding that termination was in the best interest of S.L.; therefore, we limit our analysis to the statutory termination grounds. *See* TEX. R. APP. P. 47.1.

While parental rights are of a constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent–child relationship, it is also essential that the emotional and physical interests of the child not be sacrificed merely to preserve that right. *Interest of A.C.*, 560 S.W.3d 624, 630 (Tex. 2018); *Interest of L.J.H.*, No. 05-21-00183-CV, 2021 WL 4260769, at *9 (Tex. App.—Dallas Sept. 20, 2021, no pet.) (mem. op.). Because the primary focus of a termination suit is protection of the child's best interests, a parent may forfeit parental rights by his acts or omissions. *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003).

---

[3] Father's brief does not mention factual sufficiency in any context.

The Texas Family Code balances the convergent and divergent interests of parent and child by adopting a two-part standard that permits termination of the parent–child relationship only if (1) the parent's acts or omissions satisfy at least one statutory ground for termination and (2) termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2); *A.C.*, 560 S.W.3d at 630. Both elements require "clear and convincing evidence." *A.C.*, 560 S.W.3d at 630; *L.J.H.*, 2021 WL 4260769, at *9. "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007.

The heightened proof standard in termination cases alters the appellate standard of legal sufficiency review in favor of a standard that honors not only the elevated burden of proof, but also the deference an appellate court must have for the factfinder's role. *A.C.*, 560 S.W.3d at 630. In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding but must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* at 630–31; *J.F.C.*, 96 S.W.3d at 266. Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *A.C.*, 560 S.W.3d at 631.

The trial court found by clear and convincing evidence that Father had

a. knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the physical or emotional well-being of the children;

b. engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the physical or emotional well-being of the children;

c. been the major cause of the failure of the children to be enrolled in school as required by the Texas Education Code; and

d. been the major cause of the children's absence from the home without the consent of the parents or guardian for a substantial length of time or without the intent to return.

Father has not challenged (c) and (d) above. Generally, his failure to challenge these two findings would support affirmance of the termination order. *See* *M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 309 (Tex. App.— El Paso 2009, pet. denied) (trial court need only find one statutory ground to support termination). However, because findings to terminate parental rights under subsections 161.001(b)(1)(D) or (E) (the trial court's (a) and (b) findings above) can affect parental rights to other children through subsection 161.001(b)(1)(M), due process requires courts of appeal to review and detail its analysis as to termination of parental rights under subsection (D) or (E) when challenged on appeal, even if the termination can be upheld on other grounds. *Interest of Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) (per curiam); *Interest of L.J.H.*, 2021 WL 4260769, at *9.

Father first asserts the trial court erred because it "likely . . . applied the usual preponderance of the evidence standard of proof." Father's argument is belied by

–14–

the very language of the order, which states that the court made its findings "by clear and convincing evidence." Thus, this argument is without merit.

Father next urges the Court to consider the subsection (D) and (E) termination findings because they impact the future termination rights of his other children.[4] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(M). He cites relevant case law but completely fails to provide any analysis explaining how or why the evidence is legally insufficient to support the termination findings by clear and convincing evidence. *See id*. § 161.001(b)(1)(D), (E).

Despite the shortcomings in Father's analysis, we will consider whether the evidence is legally sufficient to support termination of his parental rights to S.L. Again, we are mindful that the record in this case is sealed. We will do our best to protect the parties involved while detailing some evidence supporting our conclusion.

Psychological evaluations indicated Father met the diagnostic criteria for Bipolar I Disorder, recurrent, with his symptoms manifesting episodically every few years with significant consequences. For example, in 2013, prior to the divorce, Father believed he was Jesus and the Archangel Michael. He left the family for weeks at a time and during one of his absences, he spent time with the Hopi Indians.

---

[4] Father has a child by another woman not subject to this proceeding.

After the divorce, Father disappeared for months and did not see or speak to the children. He sent Mother periodic text messages alleging the world would end soon, and he had a special role in the revolution. His text messages indicated his mental state was unstable and unpredictable. Father, however, described his behavior as seeking a deeper meaning in life. While he realized he was "eccentric," he did not think he was "crazy."

Father's psychological evaluations further indicated he lacked insight and understanding into his behavior, and he denied his minor shortcomings. He showed limited interest in taking feedback and following recommendations of others.

Father was described as charismatic, and people tended to follow him. Father appeared to use this to his advantage and ultimately created an environment where S.L. was completely dependent on him, did not trust others, and believed things Father told her that were blatant lies. Evidence indicates this contributed to the alienation between S.L. and Mother. Father's psychological evaluation noted such actions were consistent with Narcissistic Personality Disorder because he had gone to great lengths to obtain his desired outcome and, in many cases, he took dramatic steps to discredit those whose thoughts did not align with his. Father indicated that despite being told he needed therapy, he would not follow doctors' recommendations if he did not agree with them.

Reports from those involved in the case expressed tremendous concern about S.L.'s emotional well-being the longer she remained with Father. Despite the "gag"

order, Father continued to post information on social media further exposing S.L.'s privacy. This included S.L.'s personal medical history, along with allegations of sexual abuse. To be clear, while the case involved allegations of sexual abuse, CPS was unable to substantiate any of the allegations after investigating.

Father subjected S.L. to more than fourteen exams, many of which were invasive, despite no substantiation of the sexual abuse allegations. Instead, there were indications S.L. was being coached or manipulated. Counselors involved believed Father had caused long-term psychological damage to S.L. by creating an image in her mind as a victim of sexual abuse and promoting that image on the internet. During one interview, Father described S.L. as "iconic for the movement to protect children."

Father intentionally alienated and isolated S.L. from others. He encouraged S.L. to only trust him and went so far as to tell her to record conversations between her and the guardian ad litem, which made it difficult for the guardian ad litem to build rapport and do her job. The many counselors and therapists involved, along with the guardian ad litem, universally believed that if Father remained in S.L.'s life, he would threaten any chance she had of receiving the psychological help she needed.

In addition, Father was unemployed, and his source of income appeared to come from a GoFundMe or PayPal account that strangers contributed to. The guardian ad litem report noted that on the several occasions she visited S.L.

–17–

unannounced, S.L. appeared unkept, distracted, anxious, and suspicious towards the guardian ad litem.

We have carefully examined and analyzed the sealed records. We conclude that the grounds upon which the trial court based its findings for termination are supported by clear and convincing evidence and are more than ample to show that termination was in the best interest of S.L. because Father knowingly allowed S.L. to remain in conditions that endangered her emotional well-being and engaged in conduct which endangered her emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). The sealed record is replete with such evidence and in the best interests of S.L. it would serve no purpose to reveal more detailed examples than those provided. We overrule Father's eighth and ninth issues.

## Conclusion

We affirm the trial court's judgment.

PER CURIAM

210874F.P05