**Reverse and Remand in part; Affirm in part and Opinion Filed December 5, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00763-CV**

**IN THE INTEREST OF C.A.L., A CHILD**

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-21-00890-W**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Nowell

Father appeals the trial court's Decree of Termination terminating his parental rights to his son, C.A.L. Following a brief bench trial, the court found by clear and convincing evidence that statutory grounds exist for termination, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), and termination is in C.A.L.'s best interest, *see id*. § 161.001(b)(2). In seven issues, Father argues the evidence is legally and factually insufficient to support termination under family code subsections 161.001(b)(1)(D) and (E), legally and factually insufficient to support a finding that termination is in C.A.L.'s best interest, and legally and factually insufficient to support the appointment of the Department of Family and Protective Services as the

managing conservator. We reverse the trial court's Decree of Termination of Father's parental rights and remand the case for further proceedings.

BACKGROUND

C.A.L. was born in August 2021, and trial was held in July 2022. Mother was given a drug test when C.A.L. was born, and the hospital contacted the Department at that time. Father and Mother took C.A.L. home from the hospital, but C.A.L. was removed from their care fewer than three weeks later when the Department received the result from Mother's drug test showing she was positive for methamphetamines when C.A.L. was born.

Tiffany Thomas, a caseworker for the Department, testified at trial that each parent has a history of substance abuse, including heroin, meth, crack, and marijuana. Although the Department made repeated requests that Father submit to drug tests, he never did. The Department treated the tests he did not take as presumptively positive. Father's family plan, which was admitted at trial, calls for Father to, among other things, submit to monthly random drug testing. The family plan indicates Father did not participate in creating and did not sign his family plan. The document states that Father had not contacted the case worker, but the case worker "will continue diligent efforts to speak with [Father] and engage him with

his services." Thomas testified she had no communications with Father;[1] a CASA supervisor also testified that CASA had not attempted to contact Father.

Thomas's testimony indicated that, at the beginning of the case, Father made comments the Department considered inappropriate and exhibited some behavior that raised concerns about whether he was using drugs; no details were provided at trial about these comments or behaviors.

The parents have been together for several years. In October 2014, Father pleaded guilty to "assault causing bodily injury/family violence enhanced," adjudication of guilt was deferred, and he was placed on community supervision. The criminal court judge dismissed the case in September 2020, releasing Father early from his community supervision. The criminal court's order states that all conditions of community supervision were satisfactorily fulfilled.

Thomas testified the Department believed Father was a danger to C.A.L based on "his behaviors, observed choices in partner, residence, and things of that nature," and the parents put C.A.L. in conditions or surroundings that would endanger his physical or emotional wellbeing. Accordingly, the Department believed termination was appropriate.

> Q.     And given their history, behavior, drug usage, documented domestic violence in their relationships, we believe that termination is really the only path forward to ensure [C.A.L.'s] future success; is that correct?

---

[1] Thomas was not the first caseworker assigned to this matter. There was no evidence the prior caseworker had any communication with Father.

A.    Correct.

Thomas testified the Department's plan was to have C.A.L. adopted by an unrelated person because no family member had been identified for a home study. A CASA supervisor testified C.A.L. is doing well in his current home and is "very bonded to the foster parents."

At the end of the trial, the court found Father committed conduct as defined in chapter 161.001(b)(1)(D) and (E) of the family code and termination was in C.A.L.'s best interest. The court appointed the Department to serve as the permanent managing conservator.

## LAW & ANALYSIS

In his first six issues, Father argues the evidence is legally and factually insufficient to support termination under family code subsections 161.001(b)(1)(D) and (E) and insufficient to support a finding that termination is in C.A.L.'s best interest.

### A.    Standards of Review

Because the fundamental liberty interest of a parent in the care, custody, and control of her child is one of constitutional dimensions, involuntary parental termination must be strictly scrutinized. *In re C.V. L.*, 591 S.W.3d 734, 748 (Tex. App.—Dallas 2019, pet. denied) (citing *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). In parental termination cases, due process requires the petitioner

to justify termination by clear and convincing evidence. TEX. FAM. CODE. ANN. § 161.001(b). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting TEX. FAM. CODE. ANN. § 101.007)).

On appeal, we apply a standard of review that reflects the elevated burden at trial. *In re C.V. L.*, 591 S.W.3d at 748. "As a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *Id.* (quoting *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018)). Under both legal and factual sufficiency standards, we (i) consider all the evidence, (ii) defer to the factfinder's credibility determinations, and (iii) determine whether the factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *Id.* "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id.* (quoting *In re A.C.*, 560 S.W.3d at 630–31).

When conducting a legal-sufficiency review of an order terminating parental rights, the reviewing court cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* We "consider all the evidence, not just that which favors the verdict," and we assume the fact-finder resolved disputed facts in favor of its finding if a

–5–

reasonable fact-finder could do so. *Id.* We disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *Id.* 748-49.

When reviewing the factual sufficiency of the evidence supporting a termination finding, an appellate court asks whether, in light of the entire record, the evidence is such that a fact-finder could reasonably form a firm conviction about the truth of the State's allegations against the parent. *Id.* at 749. Further, the appellate court must consider whether the disputed evidence is such that a reasonable fact-finder could not have reconciled that disputed evidence in favor of its finding. *Id.* If the disputed evidence is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* "And in making this determination, the reviewing court must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.*

### B. Family Code Section 161.001(b)(1)

Texas Family Code Section 161.001(b)(1) allows for involuntary termination of parental rights if a court finds by clear and convincing evidence both that a parent engaged in one or more enumerated predicate grounds for termination and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(A)-(U), (b)(2); *see also In re M.P.*, 639 S.W.3d 700, 701–02 (Tex. 2022). However, because an order terminating a parent's rights under subsection (D) or (E) can be used as a basis to terminate the parent's rights to another child under

subsection 161.001(b)(1)(M), terminating rights under (D) or (E) has "significant" collateral consequences. *In re C.V. L.*, 591 S.W.3d at 749 (citing *In re N.G.*, 577 S.W.3d at 234; TEX. FAM. CODE ANN. § 161.001(b)(1)(M)). Therefore, "due process requires an appellate court to review and detail its analysis as to termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code when challenged on appeal." *Id.* (quoting *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019) (per curiam)).

Under section 161.001(b)(1)(D), parental rights may be terminated if clear and convincing evidence supports a finding that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for termination of parental rights if clear and convincing evidence supports a finding that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E).

Subsections (D) and (E) both require proof of endangerment. "Endanger" means to expose to loss or injury or to jeopardize a child's emotional or physical health, but it is not necessary that the conduct be directed at the child or that the child actually suffer an injury. *In re C.V. L.*, 591 S.W.3d at 750. Specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Id.* A

–7–

parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *Id.* The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Id.*

"[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Evidence of a parent's drug use, or evidence that another parent allowed a child to be around a parent or other persons using drugs, can support the conclusion that the child's surroundings endanger her physical or emotional well-being under subsection (D) and can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being under subsection (E). *In re C.V. L.*, 591 S.W.3d at 751. Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct under subsection (E). *Id.* "And where the record contains evidence that a parent engages in drug use during the pendency of a termination suit, when he knows he is at risk of losing his children," such evidence has been found legally sufficient to support a finding of endangerment under subsection (E). *Id.*

### C. Sufficiency of the Evidence under Subsections § 161.001(b)(1)(D) and (E)

The record in this case does not support a finding of endangerment by clear and convincing evidence. Mother tested positive for methamphetamines when C.A.L. was born. The record does not show that C.A.L. tested positive, Father tested positive, or that Father knew Mother was using drugs. C.A.L. then lived with his

parents for fewer than three weeks, and the record is silent about any occurrences during that time. From that point forward, C.A.L. lived with a foster family. The record shows the Department had minimal, if any, contact with Father during the pendency of this case, CASA did not attempt to contact Father, Father was not tested for drugs, and the Department treats missed drug tests as presumptively positive. However, the record does not show Father was aware he was supposed to appear for drug tests. There is no evidence Father was using drugs or that any drug use impacted his ability to parent, particularly in light of the fact that C.A.L. was removed when he was fewer than three weeks old.

We conclude the evidence is legally and factually insufficient to show by clear and convincing evidence that Father knowingly placed or knowingly allowed C.A.L. to remain in conditions or surroundings which endanger his physical or emotional well-being, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child," *see id.* § 161.001(b)(1)(E). We sustain Father's first, second, third, and fourth issues. In light of our resolution of Father's first four issues, we need not consider Father's fifth and sixth issues in which he argues the evidence is legally and factually sufficient to show by clear and convincing evidence that termination of the parent–child relationship was in C.A.L's best interest. *See* TEX. R. APP. P. 47.1.

### D. Conservatorship

In his seventh issue, Father asserts the evidence is legally and factually insufficient to support the appointment of the Department as the managing conservator. Unlike the clear and convincing standard applicable in a termination proceeding, the appointment of a non-parent as managing conservator need only be proven by a preponderance of the evidence. *In re D.P.*, No. 05-22-00147-CV, 2022 WL 2816601, at *2 (Tex. App.—Dallas July 19, 2022, no pet.) (mem. op.); *see also In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "These differing proof standards, in turn, affect the method of appellate review, which is more stringent for termination decisions than for those regarding conservatorship." *In re J.A.J.*, 243 S.W.3d at 616. Further, "[b]ecause different standards apply, evidentiary review that results in reversal of a termination order may not yield the same result for a conservatorship appointment." *Id.*

We review a trial court's order regarding conservatorship of a child for abuse of discretion. *In re D.P.*, 2022 WL 2816601, at *2 (citing *Interest of J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021)). "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE § 153.002. "A trial court's determination of what is in the child's best interest, specifically the establishment of terms and conditions of conservatorship, is a discretionary function." *Interest of J.J.R.S.*, 627 S.W.3d at 218.

Section 153.131 of the family code states:

> (a) Subject to the prohibition in Section 153.004, unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.
> (b) It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection.

TEX. FAM. CODE ANN. § 153.131. Pursuant to section 153.004(b), the court may not appoint joint managing conservators if credible evidence is presented of a history of physical abuse by one parent directed against the other parent. *See id*. § 153.004(b). Further, "[i]t is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history . . . of past or present . . . physical or sexual abuse by that parent directed against the other parent, a spouse, or a child." *Id.*

The record shows Father was indicted for assaulting Mother, a member of his family and household with whom he had a dating relationship, Father pleaded guilty to that offense, and he was placed on community supervision. Thus, credible evidence shows Father has a history of physical abuse directed against Mother, and

–11–

we conclude, then, that the trial court did not abuse its discretion by appointing the Department as C.A.L.'s managing conservator. We overrule Father's seventh issue.

CONCLUSION

Generally, rendition of judgment in favor of Father would be required where, as here, there is legally insufficient evidence. *In re J.S.*, No. 05-18-01328-CV, 2019 WL 1417142, at \*6 (Tex. App.—Dallas Mar. 29, 2019, no pet.) (mem. op.) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). However, appellate courts have broad discretion to remand in the interest of justice. *Id.* (citing *In re H.H.*, No. 05-15-01322-CV, 2016 WL 556131, at \*4 (Tex. App.—Dallas Feb. 12, 2016, no pet.) (mem. op.); *see also* TEX. R. APP. P. 43.3(b). In his Prayer, Father requests the case be remanded for a new trial. We conclude remand of this case is appropriate.

We reverse the trial court's Decree of Termination terminating Father's parental rights and remand the case for further proceedings. In all other respects, the Decree of Termination is affirmed.


220763f.p05

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.A.L., A
CHILD

No. 05-22-00763-CV

On Appeal from the 304th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. JC-21-00890-
W.
Opinion delivered by Justice Nowell.
Justices Partida-Kipness and
Pedersen, III participating.

In accordance with this Court's opinion of this date,

We **REVERSE** the trial court's Decree of Termination terminating Father's parental rights and **REMAND** the case for further proceedings as to Father. In all other respects, the Decree of Termination is **AFFIRMED**.

Judgment entered this 5th day of December 2022.