**Opinion filed June 27, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00223-CV

_____

## IN RE COMMITMENT OF ROBERT JOHN BAKER

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CV57854**

### M E M O R A N D U M   O P I N I O N

This is an appeal from a civil commitment order in which the State sought to commit Appellant, Robert John Baker, for treatment and supervision as a sexually violent predator pursuant to the Texas Civil Commitment of Sexually Violent Predators Act (the SVP Act). TEX. HEALTH & SAFETY CODE ANN. ch. 841 (West 2017 & Supp. 2023). A jury found beyond a reasonable doubt that Appellant is a sexually violent predator, and the trial court entered a final judgment and commitment order committing Appellant for treatment and supervision. HEALTH & SAFETY § 841.081. In two issues, Appellant contends that the evidence was legally

and factually insufficient to support the jury's sexually-violent-predator finding. We affirm.

*Background Facts*

On March 4, 2011, Appellant committed the third-degree felony offense of attempted sexual assault. *See* TEX. PENAL CODE ANN. § 15.01(a), (d) (West 2019); § 22.011 (West Supp. 2023). Eleven days later, Appellant committed the first-degree felony offense of burglary of a habitation "with the intent to commit the felony offense of sexual assault." *See* PENAL § 30.02(a), (d). Appellant pleaded guilty to both offenses and was sentenced to confinement in the Institutional Division of the Texas Department of Criminal Justice for ten years for the offense of attempted sexual assault and twelve years for the offense of burglary of a habitation. The trial court ordered Appellant's sentences to run concurrently.

In August 2021, the State filed a petition asserting that Appellant is a sexually violent predator. *See* HEALTH & SAFETY § 841.041. Appellant's civil commitment trial followed.[1] *See id.* § 841.061.

The State called Dr. Jason Dunham to give his expert opinion on whether Appellant has a behavioral abnormality as defined in the SVP Act. *See id.* § 841.002(2). Dr. Dunham is a licensed forensic psychologist with a Ph.D. in counseling psychology. He has over twenty years of experience in forensic psychology and has been conducting sex offender evaluations and risk assessments in Texas since 2005.

Dr. Dunham defined a behavioral abnormality as follows:

"a congenital or acquired condition that affects a person's emotional or volitional capacity such that it predisposes that person to commit a

---

[1]The trial court took judicial notice that the offenses of attempted sexual assault and burglary of a habitation with the intent to commit sexual assault are both considered "sexually violent offenses" under the SVP Act. *See id.* § 841.002(8)(A), (C), (E).

predatory act of sexual violence to the extent that the person becomes a menace to the health and safety of others."

Dr. Dunham opined that Appellant has a behavioral abnormality that renders him a sexually violent predator. In making his determination, Dr. Dunham reviewed records of Appellant's criminal history and Appellant's deposition, interviewed Appellant,[2] and assessed Appellant's scores on the Static-99R and PCLR tests.

Dr. Dunham follows a clinically adjusted actuarial approach in order to determine whether a person has a behavioral abnormality. His analysis involves "put[ting] together the diagnoses, and risk factors, and protective factors, and then com[ing] up with a formal opinion after that." Dr. Dunham defined a "risk factor" as "something that is research based and [] known to correlate with something that you're trying to measure in the future." He defined "sexual deviance" as "an abnormal sexual behavior that causes some kind of problem, either within that person or within somebody else, that's considered not normal by our standards."

Dr. Dunham testified that Appellant possessed significant risk factors, including his "psychopathic makeup," "antisocial orientation," and "sexual deviance." He determined that Appellant was sexually deviant because of his sexual offense convictions and the thirty-one sexual misconduct charges he had received in prison for "masturbating in front of female officers and exposing his penis to them and making . . . sure that they see him."

Dr. Dunham used the DSM-5 to diagnose Appellant with the "descriptive diagnosis" of non-spousal sexual abuse, exhibitionism disorder, and antisocial personality disorder. Dr. Dunham defined exhibitionism disorder as receiving sexual gratification from exposing oneself to strangers. He defined antisocial

_____

[2]Due to the COVID-19 pandemic, Dr. Dunham conducted his interview with Appellant via video conference. Dr. Dunham testified that the interview lasted for "an hour-and-a-half," which was a standard amount of time spent conducting an evaluation.

personality disorder as "a lifelong pattern of not being able to follow the rules of society" and as having a "criminal mindset" with no concern for others.

Dr. Dunham testified about the risk factors he identified when reviewing records surrounding Appellant's two convictions. Appellant's first sexual offense was against a stranger. Appellant had been waiting outside the victim's apartment complex and approached the victim from behind. Appellant put his hand over the victim's mouth, fondled the victim, forced the victim to the ground, and put his hand down the victim's shirt. The victim screamed, and Appellant ran away. Appellant told Dr. Dunham that he had met with the victim in person after meeting online, but the victim was "different" from Appellant's "type," so he left without contacting her.

Dr. Dunham testified that people who sexually offend against strangers are considered higher risk than those who offend against people they know because people who offend against strangers have higher recidivism rates. Dr. Dunham also listed Appellant attacking the victim in a public place where he could have been easily "seen or detected" and the possibility that Appellant planned the assault (since he was waiting in the parking lot for the victim) as additional risk factors.

The second victim, another stranger to Appellant, was walking home from the store. Appellant followed. When the victim arrived home, Appellant pushed his way into the victim's apartment, grabbed the victim from behind, "asked for sex," grabbed the victim's breasts and genital area, and left after the victim was able to get free. Appellant told Dr. Dunham that the victim's apartment was a "mari[h]uana house" and that "a lot of money [was] stashed in there." Appellant had planned on robbing the house, thinking it was "vacant," but saw someone in the house and left.

Dr. Dunham considered Appellant's pattern of assaulting strangers to be a significant risk factor. Further, Appellant was also in a relationship at the time he committed the offenses. Dr. Dunham said that this was significant because

Appellant still committed the offenses despite living with his girlfriend and having "access to sex."

Dr. Dunham testified that the fact that Appellant gave multiple different versions of the events was "bizarre," and that Appellant was not a credible or honest person. He found it "hard to tell" whether Appellant understood why he sexually offended, but he did not think Appellant was "actively trying to . . . prevent himself from being in that same kind of position again." Appellant's failure to accept responsibility for the offenses was a risk factor because it indicated "not having any concern for victimizing somebody."

Dr. Dunham considered Appellant's lack of remorse and lack of empathy for his victims to be "dynamic" risk factors. While Dr. Dunham testified that Appellant does have some positive factors, including his work history and periods in prison where he did not "get into a lot of trouble," he said that none of Appellant's positive factors reduce his risk to reoffend. Dr. Dunham did not consider Appellant's time in prison to be a deterrent to Appellant's "violent and sexual" behavior.

Dr. Dunham testified that Appellant's antisocial personality disorder was "elevated" and currently affecting his emotional and volitional capacity. He opined that Appellant's general risk of reoffending had increased since going to prison because of his continuous "sexual acting out" and failure to follow the rules while in prison.

Appellant's PCLR test score was a 27.4, which was "within the high range of psychopathy." Dr. Dunham considered Appellant to be a psychopath. Dr. Dunham testified that being "psychopathic" is "the most significant [risk factor] when you're looking at somebody who is antisocial." Appellant's Static-99R test score was a six—the highest risk category—which indicated that Appellant was "in the well-above average risk category for being reconvicted of a sex offense."

5

In summary, Dr. Dunham testified that Appellant's psychopathy and sexual deviance alone placed Appellant at a high risk to reoffend and that Appellant was a menace to the health and safety of another person because of the "continuity" of Appellant's criminal conduct.

Appellant also testified at the commitment trial. Appellant said that he pleaded no contest to both the charge of attempted sexual assault and the charge of burglary of a habitation, despite both final judgments reflecting that Appellant had pleaded guilty. Appellant denied that he committed attempted sexual assault. Instead, Appellant testified that he had been sitting outside of the victim's home on the morning of the incident and that he never touched the victim. Appellant said that he and the victim had "met online" and "fooled around a little bit," and that he "had interaction with her in her apartment . . . [the] [n]ight before, maybe," but that he had never attacked the victim.

During his deposition, Appellant stated that he had gone to the victim's apartment and that he was "making out" with the victim when he "got a little careless with [his] hands." When asked which version of events was correct—the version he gave during trial or the version he gave at his deposition—Appellant testified that he was only in the victim's apartment the night before the attempted sexual assault allegedly occurred and that he did not remember saying most of what was in his deposition. Appellant agreed that, during his deposition, he did not tell the State that he was in the victim's apartment only on the night before the incident.

Appellant also testified that the burglary of a habitation with intent to commit sexual assault did not happen. Appellant testified that he had "robbed" the victim's home but did not attack anyone. Appellant denied seeing or speaking to anyone. During his deposition, Appellant stated that he was planning on burglarizing the home because he thought it "was a maintenance house where they kept weed."

6

Records of the offense indicated that Appellant first told law enforcement that he "didn't go anywhere" and that he was always at home. However, Appellant's girlfriend told law enforcement that he was "out all night" on the date of the offense. Appellant then told police that he had gone to a 7-Eleven to talk to a woman he met online. Appellant testified that he did not tell law enforcement that he was home on the date of the offense and denied "chang[ing] [his] story."

Appellant testified that he had a "troubled childhood" and that he was arrested as a juvenile for threatening to bring a firearm to school. Appellant denied most of his juvenile criminal history. When the State asked Appellant if he learned anything from his interactions with law enforcement as a juvenile, Appellant responded that he learned "[n]ot to get caught."

Appellant admitted to being arrested as an adult for assault family violence, possession of marihuana, and "a fight case." Appellant admitted that he had received probation for a shoplifting charge, and that his probation was revoked for not reporting to his probation officer. Appellant denied the rest of his criminal history and testified that the records the State questioned him about were "inaccurate."

Appellant agreed that he continued to "violate the rules" while in prison. Appellant testified that he had been in two prison fights—one with a cellmate and one with a prison warden. Appellant denied assaulting the warden and testified that the warden assaulted him. Appellant had also threatened to inflict harm on an officer.

During Appellant's deposition, he admitted that he had committed two offenses involving sexual misconduct and denied the other twenty-nine, asserting that they were "made up by the officers." When the State asked Appellant at trial whether the officers had fabricated anything and whether he masturbated in front of officers thirty-one times, Appellant responded, "I don't know."

7

Appellant testified that he had previously participated in "cognitive intervention" and that he was currently participating in the "Serious and Violent Offender Reentry Initiative" program. Appellant testified that he was learning how to control his anger. Appellant remembered his program supervisor told him that sexual misconduct offenses would not be tolerated in the program. Appellant denied telling the program supervisor that he "just want[ed] to lay back and watch the program's movies" and denied saying that he did not care if he lost parole because he "only had fourteen months left anyway."

When asked if he knew why he sexually offended against his victims, Appellant responded, "Not really." Appellant testified that he was not currently enrolled in a program for sex offender treatment and that enrolling in a program "[p]robably wouldn't hurt" because he had "nothing else to do." When he was deposed, Appellant denied stating that he did not need sex offender treatment. Appellant admitted that he had an anger management problem; problems with authority, rules, and laws; and difficulty controlling his behavior. Appellant testified that he has been learning how to control his behavior.

Appellant admitted that he is a sex offender. Appellant denied having "a problem dealing with sex." Appellant told the State in his deposition that he thought he was "addicted to sex," but Appellant testified at trial that "[t]hat was a long time ago" and that he no longer thinks he has that problem. Appellant testified that sex addiction was a problem for him when he was younger and that it caused him to go to prison. Appellant testified that he was never going to sexually offend again and that he was "sorry for everything [he had] done in [his] life." Appellant testified that he did not understand why he sexually offended and that he had not taken any classes or learned how to avoid sexually offending again. Appellant also reiterated that he did not commit the crimes he was accused of and said he only "rob[bed] a house."

On cross-examination, Appellant testified that he had a "problem" with alcohol and marihuana. Appellant testified that he had quit drinking before the attempted assault. However, Appellant had previously testified that he had been drinking when the first offense occurred. Appellant testified that he had relapsed that night.

At the close of the State's case-in-chief, Appellant's trial counsel moved for a directed verdict, asserting that the State had not met its burden of proof that Appellant has a behavioral abnormality. The State responded that Dr. Dunham's testimony created a fact issue regarding whether Appellant had a behavioral abnormality. The trial court denied Appellant's motion for directed verdict. The jury found beyond a reasonable doubt that Appellant is a sexually violent predator, and the trial court entered an order of commitment.

Appellant filed a motion for new trial, asserting, among other things, that there was legally and factually insufficient evidence presented at trial to support the jury's finding that Appellant is a sexually violent predator. The motion was overruled by operation of law.

*Analysis*

In Appellant's first issue, he contends that the evidence is legally insufficient to support the jury's finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence because Dr. Dunham "critically based" his opinion on Appellant's thirty-one sexual misconduct charges while in prison, which are not sexually violent offenses under the SVP Act. *See* HEALTH & SAFETY § 841.002(8). Essentially, Appellant contends that Dr. Dunham only relied on Appellant's two sexually violent convictions and thirty-one sexual misconduct charges to formulate his opinion that Appellant is likely to commit another sexually violent offense, and that Appellant's sexual misconduct charges

9

could not reasonably support the jury's finding that Appellant suffers from a behavioral abnormality.

The SVP Act provides for the civil commitment of sexually violent predators based on legislative findings that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." HEALTH & SAFETY § 841.001.

A person is a sexually violent predator if the person "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."[3]  *Id.* § 841.003(a).  The legislature defines a "repeat sexually violent offender" as a person who is convicted of "more than one sexually violent offense and a sentence is imposed for at least one of the offenses."  *Id.* § 841.003(b).  "Sexually violent offense" is defined in the SVP Act to include enumerated Penal Code offenses.  *Id.* § 841.002(8).  Finally, "[b]ehavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person."  *Id.* § 841.002(2).

A commitment proceeding under the SVP Act is a civil action that incorporates the "beyond a reasonable doubt" burden of proof from criminal cases. *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020); *In re Commitment of Stratton*, 637 S.W.3d 870, 875 (Tex. App.—Eastland 2021, no pet.).  Thus, to civilly commit a person as a sexually violent predator, the State must prove the above elements beyond a reasonable doubt. *In re Commitment of Fisher*, 164 S.W.3d 637,

---

[3]Appellant does not contest the jury's finding that he is a repeat sexually violent offender.

639–41 (Tex. 2005). We use the same legal sufficiency standard that we use in criminal cases: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Stoddard*, 619 S.W.3d at 674–75 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In so doing, we assess the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the statutory elements required for commitment beyond a reasonable doubt. *Id.* The jury is the sole judge of the witnesses' credibility and of the weight to be given to their testimony. *In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.— Houston [14th Dist.] 2017, no pet.).

Appellant asserts that Dr. Dunham's heavy reliance on the thirty-one sexual misconduct charges Appellant received in prison only proved that Appellant might be likely to commit "non-sexually violent misdemeanor offenses in a prison setting," and did not prove that Appellant is likely to commit a sexually violent offense in the future, as required by the SVP Act. However, Appellant mischaracterizes Dr. Dunham's testimony. Dr. Dunham testified that he reviews diagnoses, risk factors, and protective factors when determining whether a respondent has a behavioral abnormality. Here, Dr. Dunham interviewed Appellant, reviewed Appellant's criminal history and deposition, and conducted a Static-99R and PCLR test.

Dr. Dunham determined Appellant was sexually deviant because of his two sexually violent convictions and the thirty-one sexual misconduct charges. Further, Dr. Dunham diagnosed Appellant with exhibitionism disorder because of his sexual misconduct in prison. Therefore, Dr. Dunham did factor Appellant's sexual misconduct charges into his determination that Appellant had a behavioral abnormality. However, they were not the only basis other than Appellant's sexually

11

violent convictions for Dr. Dunham's opinion, as Appellant suggests. Appellant's contention that his sexual misconduct charges cannot reasonably support Dr. Dunham's opinion that Appellant suffers from a behavioral abnormality (1) ignores Dr. Dunham's testimony about everything he relied on in forming his opinion; and (2) seems to be questioning Dr. Dunham's reliability, which was not raised as an issue before the trial court and is thus not preserved for our review. *See* TEX. R. APP. 33.1; *Emerson Electric Co. v. Johnson*, 627 S.W.3d 197, 204 (Tex. 2021) ("An objection to the admissibility of expert testimony must be sufficiently timely and specific to allow the court to exercise its role as the gatekeeper of the evidence.").

Moreover, Dr. Dunham testified that Appellant possessed "significant" risk factors in addition to his sexual deviance, including his psychopathy and antisocial personality disorder. Dr. Dunham opined that Appellant's antisocial personality disorder was "elevated" and affected his current emotional and volitional capacity. Appellant scored a six on the Static-99R test, indicating that Appellant was at the highest risk category for being reconvicted of a sex offense. Further, Dr. Dunham testified that Appellant's pattern of offending against strangers, decision to commit a sexually violent offense while in a relationship, attacking his first victim in a public place, and potentially planning the first assault were all risk factors that were present at the time Appellant committed his two sexually violent offenses.

Additionally, Dr. Dunham considered Appellant's lack of remorse and empathy to be dynamic risk factors. Dr. Dunham identified Appellant's failure to take responsibility for his offenses as another risk factor. Dr. Dunham did not believe that Appellant understood why he sexually offended and did not believe that Appellant was trying to avoid committing sexual offenses in the future.

12

The jury was the "sole judge of the credibility of witnesses and the weight to be given to their testimony." *Stoddard*, 619 S.W.3d at 674 (quoting *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found beyond a reasonable doubt that Appellant suffered from a behavioral abnormality. We overrule Appellant's first issue.

In his second issue, Appellant contends that the evidence is factually insufficient to support the jury's finding that Appellant suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The standard of review for a factual-sufficiency review differs from the evaluation for legal sufficiency. A "factual sufficiency review is premised on consideration of the entire record." *Stoddard*, 619 S.W.3d at 674 (citing *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018)). As with the legal sufficiency analysis, there is still an assumption that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. *Id.* at 674. "However, disputed evidence that a reasonable factfinder could *not* have credited in favor of the finding is treated differently" in a factual sufficiency analysis. *Id.* at 676. Thus, in sexually violent predator cases,

> where the burden of proof is beyond a reasonable doubt, the evidence is factually sufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the [sexually violent predator] finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met.

*Id.* at 674–75. A reviewing court's mere disagreement with the factfinder "as to the proper evidentiary weight and credibility cannot be the basis of a reversal on factual-insufficiency grounds." *Id.* at 677.

13

In support of his argument, Appellant reasserts that "[t]he undisputed evidence" of his thirty-one sexual misconduct charges cannot reasonably support an inference that he will commit another sexually violent offense. Appellant contends that Dr. Dunham's "critical[]" and improper reliance on Appellant's sexual misconduct charges "is so significant that the [jury] could not have found" that Appellant suffered from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. This is the only evidence upon which Appellant relies in asserting that the evidence is factually insufficient.

We have already concluded that Appellant's contention that Dr. Dunham only considered his two sexually violent convictions and thirty-one sexual misconduct charges in forming his opinion is a mischaracterization of Dr. Dunham's testimony. Dr. Dunham testified that he interviewed Appellant, reviewed Appellant's criminal history and deposition, and conducted a Static-99R and PCLR test in order to form his opinion that Appellant suffers from a behavioral abnormality.

We have reviewed the entire record in accordance with the applicable standard of review. The disputed evidence in this case—none of which is disputed on appeal—consists of Appellant pleading guilty to attempted sexual assault, Appellant pleading guilty to burglary of a habitation with the felony intent to commit sexual assault, and the accuracy of records detailing Appellant's criminal history, including Appellant's deposition. The extent that the jury could not have credited this evidence in favor of the verdict is limited at best. The undisputed evidence contrary to the jury's verdict consists of Appellant's positive factors, including his stable work history and periods of time in prison where he followed the rules. This undisputed evidence is marginal. Thus, the evidence contrary to the jury's verdict was not so significant that the jury could not have found beyond a reasonable doubt that Appellant suffers from a behavioral abnormality that makes him likely to engage

in a predatory act of sexual violence and that Appellant is a sexually violent predator. Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


June 27, 2024
Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.