# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00248-CV

### K. M. S., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

#### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
#### NO. C-23-0019-CPS, THE HONORABLE ELIZABETH WATKINS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

K.M.S. (Mother) appeals from the district court's order, following a bench trial, terminating her parental rights to her three daughters A.G.G. (Abby), approximately 14 years old at the time of trial, K.E.V. (Kristen), approximately nine years old at the time of trial, and K.S. (Kelly), approximately one year old at the time of trial.[1]  In a single issue on appeal, Mother asserts that the evidence is legally and factually insufficient to support the district court's finding that termination of her parental rights was in the best interest of the children.  We will affirm the order terminating Mother's parental rights.

---

[1]  For the children's privacy, we refer to them using pseudonyms and to their parents and other relatives by their familial relationships to each other.  *See* Tex. R. App. P. 9.8.  Each of the children had a different father whose parental rights were also terminated in the court below, but none of the fathers have appealed the district court's order.

## BACKGROUND

The case began in April 2023, when the Texas Department of Family and Protective Services (the Department) received a report alleging neglectful supervision of the children by Mother, who had exposed them to methamphetamine and marijuana. According to the Department's removal affidavit, a copy of which was not admitted into evidence but has been included in the clerk's record, Mother and the two older children tested positive for methamphetamine, and the Department had concerns that the youngest child, who was born shortly after the case began, had been exposed to methamphetamine in the womb. Her drug-test results were pending when the Department filed its petition seeking termination of Mother's parental rights.

The children were subsequently removed from Mother's care and placed with Maternal Grandmother, where they remained throughout the case. To obtain the return of the children, Mother was ordered to complete services that included counseling, a psychological evaluation, a drug-and-alcohol assessment, drug testing, and domestic-violence and parenting classes. Mother completed some but not all her court-ordered services.

The case proceeded to a bench trial in March 2024. Mother did not appear at trial but was represented by counsel. Two witnesses testified: Department caseworker Lori Dooley and Maternal Grandmother. We discuss the evidence presented at trial in more detail below. At the conclusion of trial, the district court found by clear and convincing evidence that Mother failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the children and that termination of Mother's parental rights was in the children's best interest. *See* Tex. Fam. Code § 161.001(b)(1)(O), (2). This appeal followed.

## STANDARD OF REVIEW

"Section 161.001 of the Texas Family Code requires two findings to support termination of a parent's legal rights: (1) the parent's acts or omissions must satisfy an enumerated statutory ground for termination; and (2) termination must be in the children's best interest." *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021); *see In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam); *A.C. v. Texas Dep't of Fam. & Protective Servs.*, 577 S.W.3d 689, 697 (Tex. App.—Austin 2019, pet. denied). "Proceedings to terminate the parent-child relationship implicate rights of constitutional magnitude that qualify for heightened judicial protection." *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018). Parental rights have been characterized as "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). They are "perhaps the oldest of the fundamental liberty interests" protected by the United States Constitution. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *E.E. v. Texas Dep't of Fam. & Protective Servs.*, 598 S.W.3d 389, 396 (Tex. App.—Austin 2020, no pet.). "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky v. Kramer*, 455 U.S. 745, 759 (1982). "Consequently, termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent." *Holick*, 685 S.W.2d at 20. "Because termination of parental rights 'is complete, final, irrevocable and divests for all time' the natural and legal rights between parent and child," a trial court "cannot involuntarily sever that relationship absent evidence sufficient to 'produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *A.C.*, 560 S.W.3d at 630 (quoting Tex. Fam.

3

Code § 101.007; *Holick*, 685 S.W.2d at 20). "This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake." *Id.*

"A correspondingly searching standard of appellate review is an essential procedural adjunct." *Id.* "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id.* "Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631. "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* "In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*

However, "an appellate court's review must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "While parental rights are of constitutional magnitude, they are not absolute." *Id.* "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

**DISCUSSION**

In her sole issue on appeal, Mother asserts that the evidence is legally and factually insufficient to prove that termination of her parental rights is in the best interest of the children. Mother does not challenge the sufficiency of the evidence regarding the statutory ground for termination.

We review a factfinder's best-interest finding in light of the non-exhaustive list of considerations set out in *Holley v. Adams*, which include the child's wishes, the child's emotional and physical needs now and in the future, emotional or physical danger to the child now and in the future, the parenting abilities of the parties seeking custody, programs available to help those parties, plans for the child by the parties seeking custody, the stability of the proposed placement, the parent's acts or omissions indicating that the parent-child relationship is improper, and any excuses for the parent's conduct. 544 S.W.2d 367, 371–72 (Tex. 1976); *see A.C.*, 560 S.W.3d at 631; *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *C.H.*, 89 S.W.3d at 27. The *Holley* factors are not exhaustive, not all factors must be proved, and a lack of evidence about some of the factors does not "preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27. "We must consider 'the totality of the circumstances in light of the *Holley* factors' to determine whether sufficient evidence supports" the best-interest finding. *In re J.M.G.*, 608 S.W.3d 51, 54 (Tex. App.—San Antonio 2020, pet. denied) (quoting *In re B.F.*, No. 02-07-00334-CV, 2008 WL 902790, at *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.)).

5

**Evidence presented**

Department caseworker Lori Dooley testified that at the beginning of the case, Mother participated in her service plan, a copy of which was admitted into evidence. Mother had completed a drug-and-alcohol assessment, attended "either two or three" counseling sessions but was not successfully discharged from counseling, failed to complete domestic-violence and parenting classes, and submitted to some random drug tests but failed to submit to drug tests "probably four to five" times. Copies of Mother's drug-test results were admitted into evidence, and they show that Mother tested negative for all substances except for marijuana on one occasion in August 2023. Dooley had visited Mother's home earlier in the case and found it to be safe and appropriate for children, but Mother had not allowed Dooley access to the home since January 2024, approximately two months before trial. Dooley testified that Mother had maintained contact with her "for a while," but Dooley had "very little contact" with Mother since January 2024. Mother had responded to a text message from Dooley but had not returned her phone calls.

Dooley further testified that Mother had failed to consistently make supervised visits with the children, with her last visit being in January 2024. Dooley recounted a conversation she had with Mother at that time, in which Mother indicated that she wanted to relinquish her rights to the children because "she was not financially able to take care of her children," "she was struggling to take care of herself," and "she felt that her children being with her mother . . . was in the children's best interest."

Dooley explained that all three children had been placed together with their maternal grandparents and that the grandparents were working on becoming licensed to adopt. Dooley testified that she had no concerns about the health and safety of the children in their

current placement and that Maternal Grandmother was a good caregiver. Dooley recounted that Abby was taking medication for anxiety, that both Abby and Kristen needed counseling, and that the maternal grandparents were able to meet those needs. Dooley also testified that both Abby and Kristen wanted to be reunited with Mother and did not want Mother's parental rights terminated.

Maternal grandmother testified that she and her husband were willing to ensure that both Abby and Kristen received counseling. Regarding Abby's desire to be reunited with Mother, Maternal Grandmother recounted that she had "like hundreds of conversations" with Abby regarding Mother and that Abby "just wants to have a relationship with her mother. She doesn't want her mom to be taken away." As for Abby's understanding of the termination of Mother's parental rights, Maternal Grandmother testified, "I don't think she completely understands what that means. I think it means to her that she's never going to get to see her mom again." Maternal Grandmother had explained to Abby that termination does not mean that she would have no further contact with Mother, and she testified that she already allowed Abby to have phone conversations and FaceTime calls with Mother and would continue to do so.

Regarding her and her husband's efforts to become licensed to adopt the children, Maternal Grandmother testified that she and her husband were "working on it," "almost there," and "definitely going to get licensed." She explained, "I think we just have to get our house inspected and child-proof[ed], the fire marshal inspection, and my husband's got like two, three tests done online, and then we're good. We're done. We've pretty much finished everything." Maternal Grandmother wanted to adopt all three children, including Abby "if [she] will let us." She believed that she and her husband could care for the children into adulthood, and it was her intention to keep the siblings together.

7

Maternal Grandmother testified that she had personally observed Mother's issues with drugs and believed that Mother continued to struggle with illegal drug use. Maternal Grandmother did not believe that Mother would pass a drug test if she were to take one at the time of trial. Maternal Grandmother had conversations with Mother about her use of illegal drugs, and Mother told her that "she's trying" to give them up but that "she still struggles" with them. Maternal Grandmother did not believe it would be in the children's best interest for them to return to Mother's care. However, she would allow Mother to visit the children on holidays, birthdays, and other family events "if [Mother] gets clean and sober and stays clean and sober." Maternal Grandmother testified that Mother could behave appropriately around the children and that "she can be very loveable to her daughters." She added, "I have no doubt that she loves them. It's just a matter of being a good mom." Maternal Grandmother also testified that throughout the case, Mother had not participated in any of the children's school activities or parent-teacher conferences.

**Analysis**

Evidence in the record both supports and is contrary to the district court's finding that termination of Mother's parental rights is in the best interest of the children. The evidence in support of the finding included Dooley's testimony that Mother failed to complete her court-ordered services and that she missed four or five drug tests, which the district court could have reasonably inferred would have been positive for illegal substances. *See T.D. v. Texas Dep't of Fam. & Protective Servs.*, 683 S.W.3d 901, 914 (Tex. App.—Austin 2024, no pet.). Mother also tested positive for marijuana on one occasion while the case was pending. Maternal Grandmother testified that Mother continued to struggle with illegal drug use and that at the time

8

of trial, Mother would not be able to pass a drug test. Additionally, according to Dooley, Mother had not maintained contact with the Department in the two months before trial and had failed to consistently make supervised visits with the children, with her last visit being in January 2024. At that time, Mother had told Dooley that she wanted to relinquish her rights to the children because "she was not financially able to take care of her children," "she was struggling to take care of herself," and "she felt that her children being with her mother . . . was in the children's best interest." Dooley testified that she had no concerns about the health and safety of the children in their current placement, that Maternal Grandmother was a good caregiver, and that the maternal grandparents were able to provide Abby and Kristen with counseling. Also, Maternal Grandmother testified that she planned on keeping the siblings together, that she and her husband were in the process of becoming licensed to adopt the children, and that she would allow Mother to visit the children on holidays, birthdays, and other family events "if [Mother] gets clean and sober and stays clean and sober." Viewing the totality of this evidence in the light most favorable to the district court's finding, we conclude that a reasonable factfinder could form a firm belief or conviction that termination of Mother's parental rights was in the best interest of the children. Accordingly, the evidence is legally sufficient to support the best-interest finding.

The evidence contrary to the finding included testimony by Dooley and Maternal Grandmother that Abby and Kristen wanted to be reunited with Mother and did not want Mother's parental rights terminated, Dooley's testimony that Mother completed some of her court-ordered services at the beginning of the case and lived in a home that was safe and appropriate for the children, and Maternal Grandmother's testimony that Mother loved the children and could behave appropriately around them. We are unable to say that this evidence is "so significant that the factfinder could not have formed a firm belief or conviction" that

9

termination of Mother's parental rights was in the best interest of the children. Accordingly, we conclude that the evidence is also factually sufficient to support the finding.

We overrule Mother's sole issue.

## CONCLUSION

We affirm the district court's order of termination.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed: July 31, 2024